449 So.2d 611 (1984)
STATE of Louisiana
v.
Keffal WHITTAKER.
No. 83-KA-0902.
Court of Appeal of Louisiana, First Circuit.
April 3, 1984.
Rehearing Denied May 21, 1984.
Ossie B. Brown, Dist. Atty. by Joseph Lotwick, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
M. Michele Fournet, Appellant Counsel, Asst. Public Defender, Baton Rouge, for defendant-appellant.
Before COVINGTON, LOTTINGER and EDWARDS, JJ.
EDWARDS, Judge.
Keffal Whittaker, indicted on two counts of first degree murder, was tried before a jury and convicted on both counts of second degree murder in violation of LSA-R.S. 14:30.1 and sentenced on both counts to concurrent terms of mandatory life imprisonment without benefit of probation, parole or suspension of sentence. Alleging twenty assignments of error, defendant appeals his convictions and sentences.
Assignments of error 9, 10 and 18 were not briefed and are considered abandoned. Uniform Rules, Courts of Appeal 2-12.4. However, because we find merit in assignments *612 of error nos. 13 and 14, necessitating reversal, we need not discuss the merits of defendant's other assignments.
On the morning of February 17, 1982, Cynthia Padgett and Patricia Canavan, victims of an apparent robbery from the night before, were found murdered in a utility room in the Supermarket Washateria on 5537 Maplewood Drive in Baton Rouge. The cash register was found open and the cash tray was found missing. The murder weapon was either a .357 or .38 caliber pistol.
Shortly thereafter, Ms. Canavan's yellow Dodge Aspen, apparently used as the get-away car, was found abandoned in a graveled alley just off Choctaw Drive, about a quarter to a half mile from defendant's residence. No identifiable fingerprints were found in either the washateria or the car, nor were the murder weapon, the cash tray or the keys to Ms. Canavan's car ever recovered by the police.
On August 16 a confidential informant tipped the investigating detectives that Melvin Sterling, Darren Kent and Keffal Whittaker, the defendant, were involved in the murders. Sterling was arrested on August 17. See State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.1983), for the facts surrounding his involvement in the crime.[*] An arrest warrant was issued and Whittaker was arrested at his home shortly after midnight on August 18, 1982.
The arresting officers testified at trial that on the night of his arrest Whittaker admitted to being in Canavan's car on the night of the murders. According to the officers, he said he was walking home from his girlfriend's house when Kent and Sterling, driving a car matching the description of Canavan's, stopped to give him a lift home. He said they asked him to drive the car to his house. He said that all he knew about the murders was what he learned from the television reports later.
Darren Kent and Melvin Sterling were granted use and derivative use immunity by the district attorney and the attorney general and were subpoenaed to testify at defendant's trial. However, when called to the stand, both invoked their privilege against self-incrimination and refused to answer any questions about the murders. Each was held in contempt of court.
In assignments of error nos. 13 and 14, defendant contends the trial judge erred in allowing into evidence an irrelevant, immaterial and highly prejudicial note allegedly written by defendant on January 13, 1983, in one of the holding cells at the courthouse while he was awaiting the hearing on one of the State's motions to continue the trial.
State's witness Sergeant Leon Denham, the officer in charge of courtroom security and responsible for transporting prisoners to and from the court's holding cells during their appearances at court, testified that he retrieved the note, written on a torn piece of newspaper, from prisoner Robert Jones, after observing him put something in his sock. Denham took the note to Bill Sharp, one of the district attorney investigators in defendant's case. Sharp testified that from photographs of Kent, Sterling and Whittaker, Jones identified Whittaker as the one who had given him the note and Kent as the person to whom he was to deliver it. At trial, however, Jones testified that he was handed the note by a person he knew only as "Nellie Nell" and was told to deliver it to, in his words, some "bright dude," held in "Line one Downtown." Jones was unable at trial to make a positive identification of the defendant as "Nellie Nell."
The note is written in an almost illegible scrawl, but as best as can be transcribed, reads:
Keffal
Say man look here this Nelly Nel. Look be cool man don't f__ with thim whitefolk. Be you [for?] for real man write man and let me know I know you will hold out but when you go to trial *613 don't say inthing [any?] thing about if they ask you till thim you lie ok. We got them bicth [bitch] so will walk. It will just take time Nelly Nel. (punctuation supplied).
Urging the same bases for his objections at trial, defendant argues first that the State failed to establish defendant's authorship of the note. Second, he argues that the State failed to establish any connection between the court appearance referred to in the note and the instant trial. Third, he contends that the note is irrelevant and therefore inadmissible because the State failed to state what material facts at issue the note tended to prove or disprove. Finally, he argues that any probative value the note may have had is outweighed by the prejudice the note created in the minds of the jury.
The State, on the other hand, argues that the note is relevant to show a coverup of the defendant's involvement in the crimes. The State's interpretation is that the defendant was attempting to coax Kent to lie when called to testify at defendant's trial.
To be admissible at trial, evidence must be relevant to material facts at issue. LSA-R.S. 15:435. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Even if relevant, the evidence should be excluded if it tends to confuse the jury or excite their emotions to the undue prejudice of the defendant. State v. Ludwig, 423 So.2d 1073, 1078 (La.1982).
The note is simply saddled with too many ambiguities in meaning to support any reasonable inference of any facts tending to establish defendant's guilt as either a perpetrator or principal in the murders. See LSA-R.S. 14:24; 14:30.1. On its face, the note is susceptible to several interpretations. First, it is not at all clear whose trial the note refers to. It may refer to defendant's own trial. Or, it may refer to the trial of the intended recipient, in which case the note, rather than incriminating the defendant, would represent merely a friend's support and possibly ill-advised encouragement of perjury. Moreover, it is not clear whether or not defendant actually authored the note. It appears addressed to him rather than from him, although there was testimony that defendant was nicknamed Nellie Nell. Rather than supporting reasonable inferences of facts tending to establish defendant's guilt, the note served only to confuse and prejudice the jury against the defendant. The trial judge therefore should have ruled the note inadmissible on the basis of either its irrelevance or its highly prejudicial nature.
At trial, the State strenuously relied upon the note, especially in its closing argument, as an admission of the defendant's guilt. The State's only other evidence, wholly circumstantial, tending to establish defendant's involvement in the murders, is the proximity of the abandoned car to defendant's residence and defendant's alleged admission of driving the car on the night of the murders. We think the erroneous admission of this note into evidence substantially contributed to the verdict of guilty and was not, therefore, harmless error under LSA-C.Cr.P. art. 921.
Accordingly, we reverse the defendant's convictions, vacate his sentences, and remand this case for a new trial.
REVERSED AND REMANDED.
NOTES
[*] Another panel of this court remanded Sterling for a reopened hearing on the motion to suppress Sterling's alleged voluntary confession because the State's evidence on the issue of probable cause to arrest was ambivalent and because the trial court incorrectly ruled a taped statement inadmissible at the hearing.