463 So.2d 1270 (1985)
STATE of Louisiana
v.
Keffal WHITTAKER.
Nos. 84-K-1188, 84-K-1193.
Supreme Court of Louisiana.
February 25, 1985.
Dissenting Opinion February 26, 1985.
Rehearings Denied May 2, 1985.
*1271 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., Counsel for plaintiff-applicant and plaintiff-respondent.
Kathleen Stewart Richey, Asst. Public Defender, Alton T. Moran, Chief Public Defender, Anne L. Jordan, Philip Shaheen, Baton Rouge, for defendant-respondent and defendant-applicant.
WATSON, Justice.
Keffal Whittaker, indicted on two counts of first degree murder, was convicted by a jury of two counts of second degree murder in violation of LSA-R.S. 14:30.1.[1] Whittaker was sentenced to two concurrent terms of life imprisonment, without benefit of probation, parole, or suspension of sentence.
The Court of Appeal reversed the convictions, vacated the sentences, and remanded for a new trial on the ground that the trial court erred in admitting into evidence a note allegedly written by defendant to another jail inmate. State v. Whittaker, 449 So.2d 611 (La.App. 1 Cir.1984). Both the state and defendant applied for writs, which were granted. 458 So.2d 466 (La., 1984). The state contends the trial court was correct, and defendant argues that he is entitled to a dismissal of the prosecution for insufficient evidence.

FACTS
On the morning of February 17, 1982, the manager of the Supermat Washateria at 5537 Maplewood Drive in Baton Rouge found the front door to the washateria unlocked. The keys inside the door belonged to night employee Cynthia Padgett, who was responsible for locking the door at 9:00 P.M. The cash register was open and the cash tray, containing approximately two hundred dollars, was missing. Cynthia was often driven home at night by Patricia Canavan. The bodies of the two girls were found in a "closet" of the washateria, each one fatally shot at close range with a .38 caliber bullet. (Tr. 387) A neighbor had heard what sounded like two shots around 11:00 P.M. the previous night.
About 7:00 A.M. the same morning, in a dead-end alley near 2553 Kincaid Street, an unfamiliar and "suspicious" looking car was reported to the police. (Tr. 400) It was the car used by Patricia Canavan, which belonged to her father. It had apparently been abandoned by the murderer or murderers. The car had been left within one-half mile of defendant's residence (closer on foot).
*1272 Six months later, a confidential informant indicated that Melvin Sterling, Darren Kent and Keffal Whittaker were involved in the offense.[2] Defendant Whittaker was arrested, given his Miranda warnings and signed a form indicating he understood them. Defendant admitted he had driven the Canavan car but claimed that Kent and Sterling had picked him up as he was walking home from his girlfriend's house and requested that he drive them; he did and then dropped the car off near his home.
Whittaker's girlfriend, India Dunn, told investigators that Whittaker was not at her house the evening of the murders. She remembered the date because she saw a news broadcast about the double homicide the next morning. Her father confirmed that she was not being allowed to see Whittaker at the time. India said she had given a similar statement to "a lawyer". (Tr. 649)
At trial, defendant called his stepfather, his girlfriend, her mother, father and sister as alibi witnesses. India Dunn testified she and defendant broke up on February 12, 1982, but reconciled on Valentine's Day. After that date, Whittaker came to her house every morning and stayed until her father got up to go to work, about 11:00 or 12:00 at night. When the father left for work, Whittaker would go to his own home, his stepfather's home. Reminded that she attended school during the day, India Dunn was still positive Whittaker was with her every night. India said defendant had the nickname "Nellie Nell." (Tr. 622) She did not remember being asked by the investigators if Whittaker was with her the evening of the murders and denied saying he was not.
The remaining alibi witnesses testified Whittaker was at the Dunn home every night for about a month after the reconciliation. India Dunn's father reported for work at midnight and said Whittaker, whom he apparently also knew as Nellie Nell, was there when he got up about 11:00 P.M. every night.
On January 12, 1983, Whittaker had been in court and was then placed in a holding cell with other prisoners, including Robert Jones. Jones received a note from "Nellie Nell" (Tr. 565) which was intended for Darren Kent, who was locked in the same cell area as Jones. Sergeant Leon Denham intercepted the note, which was written on a torn piece of the January 12th Morning Advocate. The note is not entirely clear, but the approximate wording is as follows:
"Keffall
"Say man look here this nelly nel look Be cool man don't fuck with thim white folk Be for far Real man write man and let me know I know you will hold out But when you go to trild don't say ending theng about if thay ask you tell thim you lie ok we got thim Bicth so will walk it will just take time Nelly nel." (Exhibit S-49)

ISSUES AND LAW
The first issue is whether the trial court erred in finding the note to be relevant evidence. Absent a clear abuse of discretion, the trial court's ruling as to the relevancy of evidence should not be disturbed on appeal. State v. Rault, 445 So.2d 1203 (La., 1984).
LSA-R.S. 15:441 defines relevant evidence as "that tending to show the commission of the offense and the intent.... Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible." The standard of relevancy in Louisiana is based on logic and experience. State v. Davenport, 445 So.2d 1190 (La., 1984). Evidence is relevant which makes any fact indicating guilt or innocence more or less probable. "It is not necessary that all possibility of alteration be eliminated for evidence to be admissible, as long as the evidence *1273 establishes connexity by a preponderance of the evidence. State v. Rittiner, 341 So.2d 307 (La., 1977); State v. Singleton, 311 So.2d 881 (La., 1975)." State v. Sherer, 354 So.2d 1038 at 1042 (La., 1978). In State v. Elzie, 351 So.2d 1174 (La., 1977), a letter allegedly written by defendant to a rape victim apologizing for "that little incident" and encouraging her to "show him a little sympathy" by not appearing in court was found admissible.
This note is clearly relevant. It indicates consciousness of guilt and an attempt to persuade a co-defendant to remain silent or lie. The declaration: "we got thim bicth so will walk" indicates that the victims were killed to silence them. The note establishes intent to murder.
Like all evidence tending to show guilt, the note was prejudicial. However, its probative value outweighs its prejudicial effect. It is virtually an admission of guilt. State v. Elzie, supra.
The second issue is whether the evidence was sufficient to sustain the guilty verdicts. In other words:
"`... whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Jackson v. Virginia, 443 U.S. 307 at 319, 99 S.Ct. 2781 at 2789, 61 L.Ed.2d 560 at 573 [1979], which is the federal or constitutional standard); and, since this is a circumstantial evidence case, whether, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence is excluded (LSA-R.S. 15:438, the state or statutory standard)." State v. Parker, 425 So.2d 683 at 694 (La., 1983).
Defendant admitted he was driving the Canavan car on the night of the murders. His alibi witnesses did not establish that he was at the Dunn home that evening at the time of the crime. Moreover, both India Dunn and her father's alibi testimony at trial was contrary to that given during investigation. The jury could reasonably have concluded either that: (1) Whittaker was not at the Dunn home that night; or (2) he left the Dunn home in time to commit the two murders around 11:00 P.M. Defendant's admitted use of the Canavan car and his admissions in the note constitute strong circumstantial evidence of guilt.
Defendant contends that there is a reasonable hypothesis that he did not author the note. However, this is not a credible possibility. According to the witnesses and the note itself, it came from Nelly Nell, unquestionably defendant's nickname. Connexity of the note to this defendant and his crime is primarily a factual question for the jury's determination. State v. Freeman, 306 So.2d 703 (La., 1975); U.S. v. Snow, 517 F.2d 441 (9th Cir., 1975); State v. Elzie, supra.

CONCLUSION
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of second degree murder. The evidence excludes every reasonable hypothesis of innocence.
For the foregoing reasons, the defendant's convictions and sentences are reinstated and the case is remanded to the First Circuit Court of Appeal for consideration of defendant's other assignments of error.
CONVICTIONS AND SENTENCES REINSTATED; CASE REMANDED.
DENNIS, J., dissenting.
I respectfully dissent. Under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence is insufficient to support a finding of all the elements of second degree murder.
NOTES
[1] LSA-R.S. 14:30.1 provides:

"Second degree murder is the killing of a human being:
"(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
"(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
"Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
[2] Darren Kent and Melvin Sterling were granted use and derivative use immunity by the District Attorney and the Attorney General. Both were subpoenaed to testify at defendant's trial but refused and were held in contempt. For facts surrounding Sterling's involvement see State v. Sterling, 444 So.2d 273 (La.App. 1 Cir.1983).