EDWARDS, Judge.
Defendant was convicted on two counts of second-degree murder in April, 1983. This court reversed his conviction on appeal. State v. Whittaker, 449 So.2d 611 (La.App. 1st Cir.1984). Both sides applied for writs, which were granted. State v. Whittaker, 458 So.2d 466 (La.1984). The Louisiana Supreme Court affirmed the conviction and remanded the case to this court for consideration of other errors assigned by defendant.
Keffal Whittaker was found guilty of shooting two female employees just before closing time at a washateria in Baton Rouge, Louisiana. Their bodies were found in a utility room the following morning. An automobile belonging to one of the victims was discovered parked near Whittaker’s home. He admitted having driven it the night before. A confidential informant told police that Whittaker and two others were involved in the killings.
At trial a handwritten note scrawled on a piece of newspaper was introduced into evidence. Supposedly written by defendant and intended for an accomplice, it all but admits guilt and goes on to urge the party receiving it to lie. This court ruled the note inadmissible and reversed the conviction on that basis. The Supreme Court disagreed, holding that the note was admissible and relevant, and that it established the “intent to murder.” State v. Whitaker, 463 So.2d 1270 (La.1985).
*382 Aside from the question of the note’s admissibility, defendant raises eighteen assignments of error. Numbers 9, 10 and 18 were not briefed and are therefore abandoned. Uniform Rules — Courts of Appeal 2-12.4. Although many in number, the assignments present only four basie issues. These concern (1) the State’s multiple motions for continuance; (2) whether a mistrial should have been granted; (3) the use of certain photographs at trial; and (4) whether the evidence is sufficient to support the conviction.
Regarding continuances, Whittaker was indicted on August 16, 1982, and arraigned on August 23. Trial was set for September 27, 1982. Defense motions were filed and set for hearing on September 16 but were reset for October 1, 1982. Then on September 28, one day after the original trial date, Whittaker was rearraigned and a new trial date was set for November 19, 1982. On October 30, however, the State moved to continue. A later date was set, over defense objections, for January 10, 1983. On December 29, defendant filed a motion for speedy trial which was set to be heard on the same day as the trial date, January 10, 1983. But the State moved again for continuance and the court granted the motion, naming February 28, 1983, as the new date for trial. Due to illness on the part of the prosecuting attorney, the court continued the trial yet again. The case was finally heard on April 11, 1983.
The question presented is whether the judge abused his discretion in allowing the trial date to be repeatedly continued. Our Supreme Court has said, in State v. Champion, 412 So.2d 1048 (La.1982), at page 1050:
The granting or refusal to grant a motion for continuance rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal ... Whether a refusal to grant a continuance was justified depends primarily on the circumstances of the particular case. This court has generally declined to reverse convictions absent a showing of specific prejudice caused by the denial of the continuance. State v. Simpson, 403 So.2d 1214, 1216 (La.1981); State v. Ordonez, 395 So.2d 778 (La.1981).
Since prejudice must result for a denial to be reversible error, it must likewise result for the granting of a continuance to be reversible error. Defense counsel writes extensively in his brief concerning both Louisiana and federal case-law on continuances. He fails, however, to show any specific prejudice to his client resulting from the change in trial dates. Other than inconvenience and vexation, counsel presents no facts tending to show that the change in trial dates affected preparations by the defense.
Viewed in context, the delays were not excessive in this case. Whittaker was indicted on August 16, 1982, and was tried the following April. Under LSA-C.Cr.P. art. 578, the State has three years in which to bring a defendant to trial in capital cases. The delays in Whittaker’s trial dates were well within the standard for fair judicial procedure. Absent a factual showing of prejudice, an impartial observer can find no abuse of the trial court’s discretion. Accordingly, we hold these assignments of error to be without merit.
In his second category of errors, defendant argues that the absence of black persons on the jury was ground for a mistrial. The rule in Louisiana is set out in State v. Brown, 371 So.2d 751, 753 (La.1979):
The majority of this Court has held that a defendant is not denied equal protection when the state uses peremptory challenges to exclude blacks unless there is a systematic exclusion over a period of time; we impose upon the defendant the burden of establishing a prima facie showing of such exclusion. Once a defendant has done so, the state bears the burden of showing that there was no discrimination. State v. Bias, 354 So.2d 1330 (La.1978). In Bias, the Court noted its adherence to the test announced in Swain v. Alabma, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) in determining whether there was a systematic exclu *383 sion. In Swain, the United States Supreme Court held that a showing by the defense that peremptory challenges were used to exclude members of a minority in a particular case is not sufficient to establish a violation of the Fourteenth Amendment’s Equal Protection Clause. However, where defendant can show a systematic exclusion of the minority by the state over a period of time through its use of peremptory challenges a constitutional question is presented. Swain implies that defendant must demonstrate that the prosecutor continually and consciously uses peremptory challenges to exclude blacks because of their race, requiring that the record show “with [some] acceptable degree of clarity ... when, how often, and under what circumstances the prosecutor alone has been responsible for striking [the minority].” 380 U.S. at 224, 85 S.Ct. at 838. (Emphasis in original text)
The record before us shows no proof of systematic exclusion of blacks from criminal juries. Nor is there an attempt to make such proof. Since defendant has not successfully proved his point, these assignments of error have no merit.
In assignments 15, 16 and 17, defendant urges that the trial court should not have allowed the admission of three photographs of the victims as evidence. The assertion is that the pictures aroused the jury and that they were not necessary to show material facts.
Generally, photographs of a body depicting fatal wounds are relevant to prove that a crime was committed, to show the identity of the victim, to corroborate other evidence in showing how death occurred, and to establish the location and severity of wounds. The ultimate test, however, is whether the probative value of the photographs outweighs their probable inflammatory effect. State v. Sterling, 377 So.2d 58 (La.1979). This court has recently held that photographs which illustrate any fact, shed light upon any fact at issue in the case, or that are relevant to describe the person, place or thing depicted are generally admissible. State v. Craddock, 435 So.2d 1110 (La.App. 1st Cir.1983).
The photographs in the instant case are not unduly gruesome or inflammatory. They have probative value in corroborating the experts’ explanation of how the victims were killed, from what range the weapon was fired, and the killer’s likely position relative to the bodies. Accordingly, we find no abuse of discretion by the trial judge in allowing the photographs to be admitted.
Finally, defendant raises the question whether the evidence presented at trial was sufficient to support the conviction. Specifically, the defense asserts that the prosecution failed to exclude every reasonable hypothesis of innocence as required under LSA-R.S. 15:438 for proof by circumstantial evidence.
The Supreme Court has decided this question in its ruling on Whittaker’s scrawled note. In summing up, the Court said:
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found defendant guilty of second degree murder. The evidence excludes every reasonable hypothesis of innocence. State v. Whittaker, 463 So.2d 1270, 1273 (La.1985).
Accordingly, the jury’s verdict is affirmed.
AFFIRMED.