489 So.2d 1354 (1986)
STATE of Louisiana
v.
Darren KENT.
No. KA 85 1371.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
*1356 Bryan Bush, Dist. Atty., Baton Rouge by Bill Hecker, Asst. Dist. Atty., for plaintiff-appellee.
Public Defenders' Office, Baton Rouge, for defendant-appellant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and CRAIN, JJ.
GROVER L. COVINGTON, Chief Judge.
Darren Kent was originally charged by a single grand jury indictment with two counts of first degree murder. After entering a plea of not guilty, Kent filed a motion to suppress his confession. The trial court denied that motion. Prior to trial on the merits, the indictment was amended to reduce each charge to second degree murder, violations of La.R.S. 14:30.1. Kent again pled not guilty and, following trial by jury, was convicted as charged on each count. The trial court sentenced defendant to a term of life imprisonment without benefit of probation, parole or suspension of sentence on each count, to be served concurrently.
Defendant brings this appeal urging six assignments of error:
(1) The trial court erred when it denied defendant's motion to suppress his confession.
(2) The trial court erred when it denied defendant's motion for individual and sequestered voir dire.
(3) The trial court erred when it admitted into evidence State Exhibits 19, 20, 22, and 27.
(4) The trial court erred when it admitted into evidence State Exhibits 35, 38, 39 and 40.
(5) The trial court erred when it admitted into evidence State Exhibits 47 and 48.
(6) The trial court erred when it denied defense motion for a mistrial.
Assignment of error number two was not briefed and is thereby considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
On February 16, 1982, Cynthia Padgett and Patricia Canavan were robbed and murdered at the Supermat Washateria located in East Baton Rouge Parish. It was not until August of 1982 that suspicion focused on Darren Kent (defendant), Melvin Sterling, and Keffal Whittaker, as perpetrators of the instant offenses.[1] At that time, Eddie Stewart, an investigator for the East Baton Rouge Parish District Attorney's Office, who had participated in the investigation of these crimes, received a tip from a confidential informant. After corroborating information provided by the informant, Melvin Sterling was questioned about the incident. In his first statement to law enforcement officers, Sterling implicated Kent and Whittaker. Based primarily on Sterling's statement, an arrest warrant was procured. Kent, who was already incarcerated on an unrelated charge, was arrested pursuant to that warrant and taken to the detective bureau offices for questioning.
After waiving his constitutional rights, Kent gave a taped statement detailing his involvement in the incident. Kent admitted that he, Sterling, and Whittaker planned the robbery of the Supermat Washateria. Although Kent maintained that only Sterling and Whittaker possessed firearms, all three men entered the washateria and participated *1357 in the robbery. The two women inside the washateria were made to lie on the floor and to surrender the cash box to the robbers. Thereafter, Sterling took car keys from Patricia Canavan, went outside and waited in her car while Whittaker and Kent forced the two women into a closet. As Kent stood next to Whittaker, Whittaker fired two shots striking each woman once. The three men fled by driving the victim's car near Whittaker's apartment and abandoning it. After dividing the proceeds of the robbery, Kent and Sterling stayed at Whittaker's apartment that night.
Deborah Beam, manager of the washateria where the armed robbery and murders occurred, testified at trial on the merits. Ms. Beam had hired one of the victims, Cynthia Padgett, as evening attendant of that facility. Ms. Padgett was often driven to and from the work site by her roommate, Patricia Canavan. Ms. Padgett was responsible for closing the washateria at night, and her duties included storing any money in a metal box and sliding the box behind a shelf underneath the counter.
When Ms. Beam arrived at the washateria on the morning of February 17, 1982, she first observed that the front door was unlocked and that Ms. Padgett's keys were in the key hole on the inside of the door. Ms. Beam also noted that Ms. Padgett had not completed her assigned cleaning duties and that the money box was missing.
A law enforcement officer, who was called to the scene, located the bodies of the two women in a utility closet at the washateria. Dr. Hypolite Landry, who performed autopsies on both victims, testified that Cynthia Padgett died of massive hemorrhaging and trauma to the brain occasioned by one large caliber gunshot wound. Patricia Canavan died from a single gunshot wound to her left shoulder, which resulted in massive hemorrhaging to her left chest and shock due to loss of blood.
Johnnie Duplessis, who lived across the street from the washateria, testified that she heard two shots fired about 11:00 p.m. on the night of February 16, 1982. In addition, Patricia Canavan's automobile was located in the vicinity of Keffal Whittaker's apartment on the morning of February 17, 1982.
ASSIGNMENTS OF ERROR NUMBERS ONE AND FIVE:
By means of assignment of error number one, defendant urges that the trial court erred by failing to suppress his taped confession. By assignment of error number five, defendant urges error from the trial court's admitting his taped statement into evidence at the trial on the merits. In brief, defendant argues that his taped statement was the result of promises and intimidation.
In this context, defendant argues that he was intimidated by law enforcement officers who advised him that seeking counsel prior to giving a statement would be of no avail. Defendant also contends that District Attorney Ossie Brown encouraged him to give a statement by promising that he would not be charged for his involvement in the incident if he cooperated.
Louisiana statutory law requires that, before a confession or inculpatory statement may be introduced in evidence, the state must prove affirmatively and beyond a reasonable doubt that the statement was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; La.Code Crim.P. art. 703(G); State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984).
After a review of the record, we are convinced, as was the trial court, that the state satisfied its burden of affirmatively proving that defendant's confession was freely and voluntarily made after defendant had been advised of his Miranda rights and, thus, was admissible.
Once a defendant alleges specific instances of misconduct in reference to a statement, it is incumbent upon the state to specifically rebut each instance. State v. James, 459 So.2d 28 (La.App. 1st Cir.1984). The trial court's conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard *1358 them testify. State v. Loyd, 425 So.2d 710 (La.1982). The decision of the trial court on the question of whether the confession was voluntarily given is entitled to great weight and will not be overturned on appeal unless it is not supported by the evidence. State v. Haynie, 395 So.2d 669 (La.1981).
At the hearing on the motion to suppress, defendant testified that he asked for a lawyer. However, defendant claims he was dissuaded by the officers present, who advised defendant that a lawyer could not assist him. In addition, defendant testified that he spoke with District Attorney Brown. During that conversation, Mr. Brown allegedly told defendant that if he gave a statement he would not be charged with the instant offenses.
Officer Raymond Moran and District Attorney Investigator Eddie Stewart, the individuals who interviewed defendant immediately after his arrest, specifically denied that defendant requested an attorney. Rather, defendant was advised of his rights, by means of a standard waiver of rights form, immediately upon having been brought to the detective interview room. Defendant was again advised of his rights prior to making the taped statement. Both Officer Moran and Investigator Stewart maintained that defendant appeared to fully understand his rights and voluntarily waived them in each instance without reservation.
On rebuttal, District Attorney Brown testified that he and defendant met briefly at defendant's request. Mr. Brown expressly denied having advised defendant that a confession on his part would result in his not being charged with the instant offenses. Rather, Mr. Brown maintained that he merely told defendant "if he said anything be sure it was the truth."
In brief, defendant attacks the credibility of Officer Moran and Investigator Stewart because neither man recalled the brief meeting between the district attorney and defendant. However, failure to recall the meeting does not undercut the interviewers' credibility. Officer Moran and Investigator Stewart maintained that they each left the interview room briefly, although not during the actual interview of defendant. In addition, both defendant and Mr. Brown acknowledged that they were the only individuals present in the interview room during their brief encounter.
In light of all the circumstances, these assignments of error are without merit.
ASSIGNMENTS OF ERROR NUMBERS THREE AND FOUR:
By means of these assignments, defendant contends that the trial court erred by admitting into evidence, over defendant's objections, photographs of the deceased victims and the coroner's post-mortem body diagrams as the prejudicial effect of these items outweighed their probative value.
The admission of allegedly gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Lively, 457 So.2d 1236 (La.App. 1st Cir.1984). In addition, diagrams are generally admissible to aid the jury if shown to be accurate representations of the subject matter in question. The ruling of the trial court relative to their admissibility will not be disturbed on appeal absent an abuse of discretion. State v. Prestridge, 399 So.2d 564 (La. 1981).
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984). Postmortem photographs of murder victims are admissible to prove corpus delicti; to corroborate other evidence establishing the cause of death; to provide positive identification of the victim; and to establish the location, severity, and number of wounds. State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir.1984), writ denied, 460 So.2d 604 (La.1984).
The disputed photographs depict the scene of the crime and the location of the victims' bodies at the crime scene. *1359 The post-mortem diagrams objectively illustrate the nature and location of the wounds on the bodies of the victims. Argument by the prosecutor, following defense counsel's objections, reveals a conscious effort on his part to exclude the more gruesome photographs. No close-up photographs or autopsy photographs were offered into evidence. The post-mortem diagrams were offered in lieu of autopsy photographs to assist the jury in visualizing the wounds to the victims.
After examining the contested photographs, we find no error in the trial court's ruling that the probative value of those admitted photographs outweighs any prejudicial effect. Moreover, the accuracy of the disputed diagrams was not challenged by defendant. Admission of those diagrams obviated possible prejudice to defendant by serving as a substitute for other possible corroborative evidence such as autopsy photographs.
Under these circumstances, we find these assignments of error without merit.
ASSIGNMENT OF ERROR NUMBER SIX:
By means of this assignment, defendant contends that the trial court erred by failing to grant a mistrial following the playing of defendant's taped statement to the jury. Defendant argues that a mistrial should have been granted because the statement contained inadmissible other crimes evidence.
The record reveals that the complained of remarks were made by an investigator and a police officer who participated in the questioning of defendant. Prior to that questioning, Officer Moran advised defendant that "[t]he possibility of your [defendant's] participation in other crimes is also under investigation." Mr. Stewart later asked defendant about the origin of the weapons used in the commission of the instant crimes. Neither remark was a reference to another crime committed or alleged to have been committed by defendant.
The first comment was a general statement which forms a part of the waiver of rights form read to a defendant at the beginning of a taped statement. The remark was obviously a part of a standard preamble to the taking of a statement from one suspected of having committed a specific crime. It was followed by a recitation of the constitutional rights guaranteed to the subject of a criminal investigation. It did not indicate that defendant had committed or that defendant was suspected of having committed another specific crime.
In addition, Investigator Stewart's questioning of defendant with regard to the theft of guns used in the instant armed robbery and murders did not indicate defendant's involvement in another crime. Investigator Stewart asked defendant if he knew whether or not the guns in the possession of Keffal Whittaker and Melvin Sterling were stolen. Defendant responded that he was aware that Whittaker's gun was stolen; however, he did not know how or when that gun had been stolen. Defendant also stated that he was not in possession of a weapon on the night in question. Accordingly, the taped colloquy between defendant and Mr. Stewart did not implicate defendant in another crime.
Only a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official referring to another crime, committed or alleged to have been committed by the defendant, as to which evidence is inadmissible, necessitates a mandatory mistrial. See La.Code Crim.P. art. 770(2). The complained of colloquy with Mr. Stewart merely referred to defendant's limited knowledge of another crime committed by another person. We do not consider that questioning created sufficient prejudice so as to deny defendant a fair trial. See La.Code Crim.P. arts. 771, 775. Accordingly, the trial court did not err in denying defendant's motion for mistrial.
Moreover, the complained of remarks should have been anticipated by defendant. When the state seeks to introduce a confession, admission or declaration against a defendant which contains other crimes evidence, but which is otherwise *1360 fully admissible, a defendant has two options. He may waive his right to have the whole statement used, object to the other crimes evidence, and require the court to excise it before admitting the statement; or, he may insist on his right to have the statement used in its entirety so as to receive any exculpation or explanation that the whole statement may afford. See La. R.S. 15:450; State v. Morris, 429 So.2d 111 (La.1983). In the instant case, defendant did not request that the court excise references to alleged other crimes contained in his taped statement before admitting the statement. Accordingly, the state was obligated to play the taped statement in its entirety. See State v. Arvel, 481 So.2d 691, (La.App. 1st Cir.1985).
For the foregoing reasons, this assignment of error is meritless.
AFFIRMED.
NOTES
[1] See, State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.1983), appeal after remand, 462 So.2d 290 (La.App. 1st Cir.1984), writ denied, 466 So.2d 466 (La.1985); State v. Whittaker, 449 So.2d 611 (La.App. 1st Cir.1984), convictions and sentences reinstated, 463 So.2d 1270 (La. 1985), on remand, 479 So.2d 380 (La.App. 1st Cir.1985).