489 So.2d 1005 (1986)
STATE of Louisiana
v.
Clarence PLEASANT.
No. KA 85-1354.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
*1007 Donald T. Carmouche, Dist. Atty., Donaldsonville, Ralph Tureau, Asst. Dist. Atty., Gonzales, for State of Louisiana Plaintiff Appellee.
Alan J. Robert, Gonzales, for Clarence Pleasant Defendant Appellant.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
Clarence Pleasant (defendant) was indicted by the Ascension Parish grand jury for second degree murder, a violation of LSA-R.S. 14:30.1. After trial by jury, he was convicted as charged and sentenced to the mandatory term of life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. Defendant appealed, setting forth five assignments of error:
1. The trial court erred in denying him a speedy trial.
2. The trial court erred in permitting the state to introduce a gruesome photograph.
3. The trial court erred in permitting the state to introduce an inaccurate diagram.
4. The trial court erred in permitting the state to introduce a photograph on redirect examination.
5. The evidence is insufficient to support the verdict.

FACTS
Defendant was charged with the shooting death of Marie Carey, a woman with whom he had recently terminated a personal relationship. The incident occurred outside the Panama Club, a lounge located in Ascension Parish. Evidence established that a quarrel erupted between defendant and the victim inside the club, and the two adjourned outdoors to continue the discussion. Defendant grabbed the victim's purse and located a gun. Although defendant testified on his own behalf and claimed *1008 the weapon discharged accidentally, several disinterested observers testified that immediately before the shot was fired defendant stated he would kill the victim with her own weapon. The victim died as the result of a single gunshot to the left side of her chest.
Defendant immediately drove away from the scene. When law enforcement officers arrived, several eyewitnesses identified defendant by name as the perpetrator. He was located by the police and arrested approximately three hours later as he walked along the highway, having abandoned the vehicle at his residence. The gun was retrieved from the glove compartment of his car.

SPEEDY TRIAL
In assignment of error number one, defendant argues the trial court erred by denying his right to a speedy trial.[1]
Defendant was arrested on the date of the incident, October 30, 1983, and remained incarcerated until December 5, 1983, when he was released on a bond of $25,000.00. On December 8, 1983, defendant filed a motion for a speedy trial.[2] Thereafter, on December 22, 1983, the grand jury returned a true bill, charging defendant with second degree murder. He was arraigned January 9, 1984, and entered a plea of not guilty. Defendant filed a motion to quash the indictment on May 7, 1985, the morning trial was to begin, urging that he was entitled to have the charges quashed because more than 180 days had elapsed since he filed his motion for a speedy trial, citing La.C.Cr.P. art. 701. After a hearing, the court denied his motion; and the trial began, concluding with the jury verdict on May 8, 1985.
Defendant contends the prosecution was untimely under the provisions of La.C.Cr.P. art. 701(D), and that the sanction to be imposed upon the state for noncompliance is the dismissal of the prosecution.
There are two separate and distinct bases for a defendant's right to a speedy trial: a statutory right granted by La.C. Cr.P. art. 701, and a constitutional right, embodied in the Sixth Amendment to the United States Constitution and Article 1, Section 16 of the Louisiana Constitution of 1974. They are not equivalent. See State v. Sosa, 446 So.2d 429 (La.App. 4th Cir. 1984), writ denied, 450 So.2d 361 (La.1984), cert. denied, ___ U.S.___, 105 S.Ct. 209, 83 L.Ed.2d 140 (1984).

STATUTORY RIGHT
Prior to the 1981 amendment to La.C. Cr.P. art. 701, no statutory remedy existed for the violation of a defendant's right to a speedy trial. In State v. Reaves, 376 So.2d 136 (La.1979), the Louisiana Supreme Court concluded that a defendant who had not moved for a speedy trial had nonetheless been denied this right and sustained a trial court's ruling which quashed the prosecution. Thereafter, in 1981, the legislature amended article 701 to provide that the failure to try a defendant within specified time periods would result in his release without bail or discharge of the bond obligation if, after contradictory hearing, the state failed to prove just cause for the delay. La.C.Cr.P. art. 701(D).
Defendant acknowledges the existence of this legislatively created remedy, but argues that the provision requiring discharge of bond obligation or release without bail *1009 applies only to misdemeanor offenses. Citing State v. Reaves, supra, and State v. Cody, 446 So.2d 1278 (La.App. 2nd Cir. 1984), he contends that the amendment has not created a remedy for denial of speedy trial for felony offenses, and thus the only possible remedy is dismissal of the prosecution. This argument is prompted by the literal wording of article 701, which reads as follows:
A. The state and the defendant have the right to a speedy trial.
B. The time period for filing a bill of information or indictment after arrest shall be as follows:
(1) When the defendant is continued in custody subsequent to an arrest, an indictment or information shall be filed within forty-five days of the arrest if the defendant is being held for a misdemeanor and within sixty days of the arrest if the defendant is being held for a felony.
(2) When the defendant is not continued in custody subsequent to arrest, an indictment or information shall be filed within ninety days of the arrest if the defendant is booked with a misdemeanor and one hundred fifty days of the arrest if the defendant is booked with a felony.
Failure to institute prosecution as provided in Subparagraph (1) shall result in release of the defendant if, after contradictory hearing with the district attorney, just cause for the failure is not shown. If just cause is shown, the court shall reconsider bail for the defendant. Failure to institute prosecution as provided in Subparagraph (2) shall result in the release of the bail obligation if, after contradictory hearing with the district attorney, just cause for the delay is not shown.
C. Upon filing of a bill of information or indictment, the district attorney shall set the matter for arraignment within thirty days unless just cause for a longer delay is shown.
D. After the filing of a motion for a speedy trial by the defendant, the time period for commencement of trial shall be as follows:
(1) The trial of a defendant charged with a felony shall commence within one hundred twenty days if he is continued in custody and within one hundred eighty days if he is not continued in custody.
(2) The trial of a defendant charged with a misdemeanor shall commence within thirty days if he is continued in custody and within sixty days if he is not continued in custody. Failure to commence trial within the time periods provided above shall result in the release of the defendant without bail or in the discharge of the bail obligation, if after contradictory hearing with the district attorney, just cause for the delay is not shown.
E. "Just cause" as used in this Article shall include any grounds beyond the control of the State or the Court.
In State v. Cody, supra, the Second Circuit was concerned with paragraph C, the time limits for arraignment. That court noted the absence of a remedy for violation of the provision and found, therefore, that Reaves, the controlling law prior to the 1981 amendments, required dismissal of the charges.
In contrast, it is obvious by the terms of 701(D) that the legislature, by the 1981 amendments, intended to provide some remedy less than dismissal of the charges for violation of a speedy trial right. Technically, the problem defendant notes with the amended article is one of form, not of substance. Had the second sentence of sub-section (D)(2) been placed in a separate paragraph, the statutory remedy would obviously apply to both felony and misdemeanor charges. The question, then, is whether the literal wording of 701(D) should be liberally or strictly construed.
We find that La.C.Cr.P. art. 701 is a remedial, rather than a penal statute. Remedial and penal statutes are distinguishable in terms of the nature of the evil sought to be remedied by the legislation. A statute is penal if it undertakes to redress a wrong to the public and remedial if it undertakes to remedy a wrong to an individual. State v. Boniface, 369 So.2d *1010 115 (La.1979). The legislature intended by this article to protect individuals from lengthy pre-trial delays by requiring, as the alternative, the release of the accused or discharge of his bond obligation pending trial, unless just cause for the delay is shown. No wrong to the general public is addressed.
Thus, as a remedial statute, article 701 must be liberally construed; that is, in a manner which would make it applicable in more situations than would be the case under a strict construction. See State v. Boniface, supra, citing at 117, 3 Sutherland, Statutory Construction, § 60.01 at 29 (4th ed. Sands, 1974). Liberally construed, the pertinent provisions herein would apply to felony offenses as well as misdemeanor charges.
We find, therefore, that defendant, released under a bond of $25,000.00, was statutorily entitled only to the cancellation of his bond obligation and not to the dismissal of charges against him. Defendant did not move for the discharge of his bond obligation; thus, it remained in effect until trial.

CONSTITUTIONAL RIGHT
The constitutional right to a speedy trial is not dependent upon a motion but attaches when an individual becomes an accused, either by formal indictment or bill of information, or by arrest and actual restraint. See State v. Nowell, 363 So.2d 523 (La.1978).
In determining whether this constitutional right has been violated, no fixed time period is determinative; rather, the conduct of both the prosecution and the defense are weighed in light of several factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the actual prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Nowell, supra; State v. James, 459 So.2d 1299 (La.App. 1st Cir.1984); writ denied, 463 So.2d 600 (La.1985). The peculiar circumstances of the case will determine the weight to be ascribed to the length of the delay and the reasons for the delay. State v. Reaves, supra.
As previously noted, defendant was arrested October 30, 1983, and tried May 7-8, 1985. The record reflects that discovery began in January, 1984, and concluded January 7, 1985. On January 14, 1985, the state moved to set the matter for trial; and the trial date of May 7, 1985, was set. Thus, the record reflects the state moved for and received a trial date within one week of completion of discovery, and the delay in between the motion to have the trial set and the actual trial was slightly less than four months.
The next factor to be considered in the speedy trial analysis is the reason for the delay. As we noted previously, discovery procedures continued until January, 1985. Defendant does not allege, nor does the record reflect, that the lengthy period of discovery was occasioned by the deliberate actions of the state. Similarly, no cause was adduced to explain the delay of some four months after the state moved for a trial date. If the other factors of this analysis substantiated a true deprivation of a speedy trial right, we would find this lack of explanation disturbing.[3] However, we do not find the failure to establish a reason for the delay critical under the peculiar facts of this case, when examined in light of the remaining factors.
The third factor to be considered under Barker v. Wingo, supra, is whether or not defendant asserted his right. Defendant *1011 filed one such motion, in December, 1983. Although defendant argues no further action to bring the matter to trial was necessary because that motion constituted his request to set a trial date, in actuality defendant had not yet been formally charged, nor had discovery begun. Defendant took no further action to bring the matter to trial. On the date trial was to begin, some fifteen months later, he filed a motion to quash based on the allegation that the time limits for prosecution had expired. Accordingly, although we recognize that the state has the greater burden in setting a matter for trial, we note defendant did not pursue his speedy trial claim.
Finally, we must consider whether or not defendant was prejudiced by the delay. Defendant claims he was prejudiced because several witnesses, who freely testified to the consumption of a substantial quantity of alcohol on the date of the offense, indicated by their testimony that the delay may have occasioned a less than total recall of the events. However, no actual impairment of defendant's ability to prepare his case, the most serious form of prejudice normally experienced by an accused whose trial is delayed, has been documented. Notwithstanding the amount of alcohol consumed and the trial delay, the witnesses were able to testify in considerable detail about the incident.
No other prejudice was alleged. We note that defendant testified on his own behalf, and stated he had resumed his former employment upon his release on bond and returned to the home he shared with his paramour.
In balancing the foregoing factors, we do not find the length of delay so extreme as to outweigh the other factors. Although reasons for the delay were not adduced, it appears to be at least partially attributable to the discovery measures undertaken. We take note of the fact that the state requested that a trial date be set as soon as discovery was complete.
Although defendant did file a motion for speedy trial before he had been formally charged, he took no further action to expedite trial. Finally, the record does not reflect prejudice to the accused other than that pressure and stigma any accused must bear until trial. Defendant was able to resume his normal activity and suffered as minimally as possible, especially in light of the serious nature of the charge.
We find no merit in this assignment of error.

ADMISSION OF GRUESOME PHOTOGRAPH
By assignment of error number two, defendant alleges the trial court erred in permitting the introduction of a gruesome photograph of the victim. Defendant alleges the admission of the photograph was error because he would have stipulated to the identification of the victim, and its introduction was unnecessary for that purpose.
Generally, photographs of a body depicting fatal wounds are relevant to prove that a crime was committed, to show the identity of the victim, to corroborate other evidence in showing how death occurred, and to establish the location and severity of the wounds. The ultimate test, however, is whether the probative value of the photograph outweighs its probable inflammatory effect. State v. Whittaker, 479 So.2d 380 (La.App. 1st Cir.1985). Photographs which illustrate any fact, shed light upon any fact at issue in the case, or that are relevant to describe the person, place or thing depicted are generally admissible. Id.
Although the existence of a stipulation must necessarily bear upon a balancing of the probative value of the photograph, the decision remains primarily one for the trial court. State v. Cobbs, 434 So.2d 1243 (La.App. 1st Cir.1983), writ denied, 440 So.2d 758 (La.1983). Generally, the possibility of prejudice will not be permitted to thwart the state's necessary attempts to prove the method and results of the crime. State v. Gilmore, 332 So.2d 789 (La.1976). Nor will a defendant be permitted to rob the state's evidence of its fair *1012 and legitimate weight by a unilateral stipulation. Id.
We note that although defendant quotes the state as offering the photograph only to "show the victim"presumably to identify herthe state advised the court the photograph was also offered to illustrate the position and condition of the victim's body when the police officers arrived. This valuable evidence was not reflected in defendant's stipulation.
The admission of a gruesome photograph will not be overturned unless it is clear that the prejudicial effect of the photograph outweighs its probative value. State v. Bell, 477 So.2d 759 (La.App. 1st Cir.1985), writ denied, 481 So.2d 629 (La. 1986). The photograph in the instant case is not unduly gruesome or inflammatory. It is relevant to corroborate the expert testimony of the cause of death and to show the relative position of the victim to her attacker. We find no error in the court's determination that the photograph had probative value beyond the stipulation offered by defendant, and we find no error in the introduction of the photograph. This assignment of error has no merit.

ADMISSION OF SKETCH OF CRIME SCENE
By assignment of error number three, defendant argues the trial court erred in permitting the state to introduce a sketch made by a police detective in preparation for trial. He argues the sketch was prejudicial because the detective, Paul Robert, testified that it was drawn to scale, although he was not qualified as an expert in any field.
Diagrams are admissible to aid the jury in understanding testimony if they are a reasonable visual demonstration of the events which the witnesses are relating. State v. Prestridge, 399 So.2d 564 (La. 1981). The sketch in question was drafted by the investigator based on a rough draft prepared at the scene and on actual measurements taken of the area. Both the rough draft and the sketch prepared for trial were admitted; defendant specifically had no objection to the rough draft. His objection to the second sketch is based entirely on the fact that the detective testified it was accurate and to scale, although the dimensions did not exactly correspond to the approximations of the eyewitnesses, and conflicted with testimony of his own expert witness (who had not yet testified).
The lack of drafting skill and the inaccuracies of the drawing go to the weight, not the admissibility, of the sketch. State v. Jenkins, 476 So.2d 478 (La.App. 1st Cir. 1985). Defendant had the opportunity, on cross-examination of Detective Robert, to point out to the jury any inaccuracies in the diagram. See State v. Lawrence, 365 So.2d 1356 (La.1978), cert. denied, 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979).
The trial court's ruling on the admissibility of a diagram will not be disturbed unless there has been an abuse of discretion. See State v. Prestridge, 399 So.2d 564 (La.1981). We find no such abuse of discretion herein. Accordingly, this assignment of error has no merit.

ADMISSION OF EVIDENCE BEYOND SCOPE OF REDIRECT EXAMINATION
By assignment of error number four, defendant contends that the trial court erred in permitting the state to introduce a photograph of the victim which was not referred to, used or mentioned during direct examination. The photograph, which depicted the victim's face and upper torso, was introduced during the testimony of Detective Paul Robert and was offered to show the victim's body in relation to the handbag from which defendant removed the murder weapon.
LSA-R.S. 15:281 provides for redirect examination as follows:
The redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided *1013 that the opportunity be not denied to recross on the new matter brought out on the redirect.
While the redirect technically exceeded the scope of questioning permitted under LSA-R.S. 15:281, defendant was permitted to fully cross-examine the witness on the photograph. A conviction will not be reversed due to the trial judge's control of the examination of a witness unless an abuse of discretion is shown. State v. Chapman, 410 So.2d 689 (La. 1981); State v. Savoie, 448 So.2d 129 (La. App. 1st Cir.1984), writ denied, 449 So.2d 1345 (La.1984). Although defendant argues that the photograph, showing the bloodied body of the victim, was highly prejudicial, it does not differ substantially from the photograph we previously found relevant and admissible. This assignment of error thus has no merit.

SUFFICIENCY OF THE EVIDENCE
By assignment of error number five, defendant contends that the evidence is insufficient to support his conviction.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). The Jackson standard of Article 821 is an objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt.
A plea of not guilty places upon the state the burden of proving beyond a reasonable doubt each element of the crime charged. La.R.S. 15:271; La.C.Cr.P. art. 804(A)(1); State v. Humphrey, 412 So.2d 507 (La. 1981); State v. Gomez, 433 So.2d 230 (La. App. 1st Cir.1983), writs denied, 440 So.2d 730 (La.1983) and 441 So.2d 747 (La.1983).
Defendant claims the evidence is not sufficient to support the conviction of second degree murder because his expert witness, Patrick Lane, testified that the forensic evidence indicated the parties were twelve to twenty inches apart (as opposed to the six to eight feet to which the state witnesses testified) and thus the shooting could have been accidental, the result of a struggle between the victim and defendant.
Defendant claims the victim was a violent woman and that he had reason to fear for his life. To that end, during trial he presented evidence which included the victim's criminal record and previous threats she had made against him. Notwithstanding the provisions of LSA-R.S. 15:482, the state did not object to the introduction of this evidence. Defendant now claims the victim pulled her gun on him and he exclaimed, "Marie, don't kill me with that damn gun." He asserts they struggled for the weapon and the gun fired. Defendant testified he was on his way to the Donaldsonville Police Station when he saw and flagged down a police car, approximately three hours later.
Two of the state's witnesses testified that defendant forced the victim from the bar. Once outdoors, they saw him grab her purse and search through it, bringing forth a pistol. Defendant then stated, "I'll kill you with your own damn gun." Both witnesses also testified the victim refused assistance, stating defendant would not harm her. She was shot immediately thereafter.
Defendant claims the testimony of Patrick Lane supports his theory that the gun discharged during a struggle. To the contrary, although the distance does not exactly accord with the approximate distances furnished by the witnesses, the forensic evidence does not rule out the possibility of deliberate action. The threats by defendant, *1014 closely followed by the shooting death of the victim, do not support defendant's assertion of an accident.
The jury obviously rejected defendant's testimony and found he had the requisite specific intent. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1st Cir.1984), writ not considered, 456 So.2d 161 (La. 1984). The foregoing circumstances and the inferences derived therefrom reasonably support the conclusion that the state proved the essential elements of the offense. This assignment of error has no merit.

PATENT ERROR NOTE
The indictment of the accused does not bear the statutory citation of the charge. Error in the citation or its omission shall not be ground for dismissal of the indictment if the error or its omission did not mislead the defendant to his prejudice. La. C.Cr.P. art. 464.
The indictment clearly charges defendant with second degree murder. Defendant does not allege, nor does the record reflect, prejudice to the accused resulting from omission of the statutory citation. We find this error inconsequential in light of the proceedings as a whole.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
LANIER, J., concurs and assigns reasons.
LANIER, Judge, concurring
I agree with the majority opinion except, in part, the treatment of assignment of error number one on speedy trial.
In assignment of error number one, the appellant contends he is entitled to have the indictment against him quashed because the State violated his constitutional right to a speedy trial and his statutory right to a speedy trial of La.C.Cr.P. art. 701. I agree with the majority opinion that the appellant has demonstrated no delays or prejudice such as would entitle him to quash the prosecution for violation of the constitutional speedy trial right. State v. Cole, 384 So.2d 374 (La.1980).
La.C.Cr.P. art. 578 provides that for a noncapital felony (such as second degree murder herein) no trial shall be commenced after two years from the date of institution of the prosecution. If the State fails to comply with this mandate, La.C.Cr.P. art. 581 provides that the court shall, upon motion of the defendant, dismiss (quash) the indictment.
It is a well-settled rule of statutory construction in Louisiana that laws concerning the same subject matter (in pari materia) must be construed with reference to each other because what is clear in one statute may aid in explaining what is doubtful in another. La.C.C. art. 17; State v. Brady, 310 So.2d 593 (La.1975). La.C.Cr.P. art. 701 must be construed in pari materia with Articles 578 and 581. A review of Articles 701 shows that it does not provide anywhere therein for quashing the charge as a sanction for violation of its requirements. The only sanction provided by Article 701 for violation of some of its provisions is "release of the defendant without bail or in the discharge of the bail obligation." The appellant herein seeks to have the indictment against him quashed; he does not seek release from bail. (At the present time, the appellant does not have a right to bail. La. Const. of 1974, art. I, § 18.) In the absence of a sanction in Article 701 authorizing the quashing of the indictment, Articles 578 and 581 are controlling. The grand jury indictment was returned herein on December 22, 1983; the trial commenced on May 7, 1985. Two years did not elapse between the institution of prosecution and the trial, and the appellant is not entitled to have the indictment quashed. It is unnecessary to qualify Article 701 as a remedial statute (which I believe is arguable) or to apply a liberal construction to it. Because the appellant seeks quashing and not release from bail, it is unnecessary to determine if the release *1015 from bail sanction of Article 701(D)(2) is applicable to Article 701(D)(1).
I do not agree with the implication of the majority opinion that State v. Cody, 446 So.2d 1278 (La.App. 2nd Cir.1984) held that the sanction of quashing was always available for any violation of an Article 701 provision for which no sanction was provided by the legislature. In Cody, 446 So.2d at 1284, the court framed the issue to be decided as follows:
Having determined that the state failed to comply with LSA-C.Cr.P. Art. 701 C., this court must determine the proper remedy, if any. The legislature provided no remedies for failure to comply with the period for arraignment under LSA-C.Cr.P. Art. 701 C. as it did for failure to comply with the time for filing an indictment or information or for commencement of trial under Article 701 B. and D. LSA-C.Cr.P. Art. 701 C. is one part of article 701 relating to the defendant's right to a speedy trial. Consequently, this court will review the denial of a right of arraignment within 30 days under the factors considered by the Louisiana Supreme Court in evaluating speedy-trial claims prior to the 1981 amendment to Article 701. The Supreme Court has listed the following four factors to be considered in each particular case: (1) length of delay; (2) reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant, such as the possible impairment of the presentation of the accused defense. State v. James, 394 So.2d 1197 (La.1981); State v. Reaves, 376 So.2d 136 (La.1979). We consider defendant Cody's contentions in light of these guidelines. [Bolding added.]
After analyzing the facts, the Cody court held as follows:
Having found that the defendant did not timely assert his right to arraignment and that the delay did not prejudice the defendant's ability to present a defense, this court has determined this assignment of error to be without merit.
[Cody, 446 So.2d at 1284.]
The holding of Cody, as I perceive it, is that in instances where no legislative sanction has been provided for violation of an Article 701 provision, the defendant is only entitled to relief if there was a violation of the constitutional right to a speedy trial. The factors considered in Cody are those used to determine if there was a violation of the constitutional right to a speedy trial. The James and Reaves cases cited in Cody addressed the constitutional right to a speedy trial. Cody did not hold that quashing was available as a sanction for any violation of an Article 701 provision for which no legislative sanction was provided. The majority was correct when it observed that "it is obvious by the terms of 701(D) that the legislature, by the 1981 amendments, intended to provide some remedy less than dismissal of the charges for violation of a speedy trial right."
For these reasons, I respectfully concur.
NOTES
[1] We note that the proper procedural vehicle for raising a speedy trial claim is by motion to quash the indictment. State v. Reaves, 376 So.2d 136 (La.1979). Defendant correctly filed a motion to quash which was denied by the trial court. On appeal, he argues the court erred in denying his right to a speedy trial, rather than the denial of his motion to quash. Because defendant did present his claim first to the trial court, we will treat the issue as though it had been properly pursued.
[2] Although briefs filed by both the state and defendant assert this motion was granted by the trial court on December 12, 1983, the record does not reflect this ruling. The critical factor in a speedy trial claim is whether or not the motion was filed; thus, we will consider defendant's motion as though the court granted it, although the ruling does not appear of record.
[3] Moreover, it is not clear that defendant raised the constitutional right to a speedy trial in the district court. Defendant's motion to quash the indictment is specifically based on La.C.Cr.P. art. 701 and the time limits contained in that article. The hearing on defendant's motion to quash was concerned only with the effect of that article since the court may not hear an objection based on grounds not stated in the motion. La.C.Cr.P. art. 536. A new ground for a motion to quash cannot be raised on appeal. Since the constitutional speedy trial issue has been raised to a limited extent by the parties, we will consider it, but only because the record before us provides the grounds upon which we are able to rule.