2016-0370 (La.App. 4 Cir. 12/21/16)
**STATE of Louisiana**

v.

**Michael THOMASSIE**

NO. 2016–KA–0370

Court of Appeal of Louisiana, Fourth Circuit.

DECEMBER 21, 2016

Rehearing Denied Jan. 9, 2017

Leon A. Cannizzaro, Jr., District Attorney, Donna Andrieu, Assistant District Attorney, Kyle Daly, Assistant District Attorney, PARISH OF ORLEANS, 619 South White Street, New Orleans, LA 70119, COUNSEL FOR APPELLEE/STATE OF LOUISIANA

Christopher A. Aberle, LOUISIANA APPELLATE PROJECT, P.O. Box 8583, Mandeville, LA 70470–8583, COUNSEL FOR DEFENDANT/APPELLANT

(Court composed of Judge Paul A. Bonin, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

Judge Rosemary Ledet

⌊₁In this criminal appeal, the defendant, Michael Thomassie, appeals his conviction and sentence for aggravated rape, a violation of La. R.S. 14:42.[1] For the reasons that follow, we reverse and remand for a new trial.[2]

## STATEMENT OF THE CASE

On February 13, 2014, the State charged Mr. Thomassie by grand jury indictment with aggravated rape. On March 18, 2014, he was arraigned and pleaded not guilty.

---

**1.** In 2015, the legislature amended the title of La. R.S. 14:42, changing it from "aggravated rape" to "first degree rape." *See 2015 La. Acts No. 184, § 1. La. R.S. 14:42(E) provides as follows:*

E. For all purposes, "aggravated rape" and "first degree rape" mean the offense defined by the provisions of this Section and any reference to the crime of aggravat-

ed rape is the same as a reference to the crime of first degree rape. Any act in violation of the provisions of this Section committed on or after August 1, 2015, shall be referred to as "first degree rape".

**2.** As we routinely do, we have reviewed the record on appeal for errors patent and found none.

On August 17, 2015, Mr. Thomassie filed a motion to continue the trial, which the district court denied.[3]

On the next day, jury selection began. On August 19, 2015, before trial commenced, the district court conducted a hearing regarding the admissibility of certain text messages retrieved from Mr. Thomassie's cell phone. Over defense counsel's objections, the district court ruled that the text messages exchanged on August 17, 2015 between Mr. Thomassie and C.R., Mr. Thomassie and Anna Henry, and Mr. Thomassie and Sergeant Bruce Glaudi were admissible.[4] On August 20, 2015, trial concluded. On that same day, the jury found Mr. Thomassie guilty of aggravated rape.

On December 15, 2015, the district court denied Mr. Thomassie's motion for judgment of acquittal and new trial, and sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

## STATEMENT OF FACTS

H.P., the victim, was born on June 7, 1996.[5] After her parents, D.C. (mother) and S.P., Sr. (father) divorced, her brothers, S.P., Jr., and B.P., went to live with their father, while H.P. stayed with her mother. About two years after the divorce, D.C. began dating Mr. Thomassie, who then was a NOPD officer. D.C. and H.P. later moved in with Mr. Thomassie in New Orleans, and in December 2003, D.C. and Mr. Thomassie had a child together—G.T.

At trial, H.P. testified that on one occasion, when she was between seven and nine years old, she was sexually abused by Mr. Thomassie.[6] H.P. testified that on the day of the incident, she came home after school, woke her sleeping mother, and asked if she could visit a friend who lived down the street. H.P. claimed that after D.C. refused to let her visit her friend, H.P. went into the living room and sat on the couch. Shortly thereafter, Mr. Thomassie approached her and asked why she was upset. H.P. explained that D.C. would not let her go to her friend's house, and Mr. Thomassie responded that he could make her feel better. H.P. testified that Mr. Thomassie then partially inserted his penis into her vagina; thereafter, he directed her to go into the dining room where he forced his penis into her mouth. H.P. stated that her mother walked into the room

---

**3.** Mr. Thomassie contended that a *Daubert/Foret* hearing was required to determine the admissibility of testimony by the State's expert witness, Anne Troy, a nurse practitioner at the Audrey Hepburn CARE Center at Children's Hospital in New Orleans. Nurse Troy's testimony related to delayed disclosure in child abuse cases. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *State v. Foret*, 628 So.2d 1116 (La. 1993). Mr. Thomassie further claimed that the State disclosed its intent to call Nurse Troy as a witness only three days before trial. He thus argued that a continuance was required to allow him adequate time to prepare to a defense against her anticipated testimony.

**4.** At trial, Detective Eddie Williams of the New Orleans Police Department ("NOPD")

Digital Forensic Unit identified the texts exchanged with Ms. Henry (State Exhibit 6) and the texts exchanged with Sergeant Glaudi (State Exhibit 7) as the texts messages he extracted from Mr. Thomassie's cell phone. Copies of the text messages were published to the jury.

**5.** The initials of the victim and victim's family members will be used in this opinion in order to protect the identity of the victim. *See* La. R.S. 46:1844(W) (barring public disclosure of the names, addresses, or identities of crime victims under the age of eighteen years and of all victims of sex offenses, and authorizing use of initials or abbreviations.).

**6.** The indictment indicates that the incident occurred between October 1, 2003 and December 31, 2005.

and witnessed Mr. Thomassie having oral sex with H.P.D.C. testified that when she entered the room, she observed Mr. Thomassie with his penis in H.P.'s mouth.

While D.C. yelled at Mr. Thomassie, H.P. went back into the living room. D.C. testified that she threatened to report Mr. Thomassie to the police, although she failed to do so.[7] Shortly thereafter, D.C. confronted H.P. and informed her that she was not allowed to be alone with Mr. Thomassie anymore. H.P. testified that she continued to live with her mother and Mr. Thomassie for about a year after the sexual abuse.[8] At some point between 2003 and 2005, H.P. went to live with her father.[9]

H.P. testified that she was about twelve or fourteen years old when she disclosed the abuse to V.L., her best friend at the time. At trial, V.L. testified that H.P. disclosed the incident with Mr. Thomassie, whom H.P. called her step-father and described as a "cop." V.L. further testified that she did not report what H.P. revealed to her. Since H.P. had not reported the incident, V.L. felt that H.P. trusted her to not report it either.

H.P. testified that in 2013, when she was about seventeen years old, the sexual abuse was first reported to law enforcement. She was helping her brother paint his newly purchased house when her mother, D.C., arrived at the house crying. H.P. testified that she got into the car with her mother, and her mother explained that Mr.

Thomassie had a young girl living in his house and that she was worried about the girl being sexually abused. After H.P. explained to her mother that she did not want to report the abuse, H.P.'s brother's girlfriend, C.R., joined them in the car. After she learned of the abuse, C.R. informed H.P. that she needed to report it. C.R. then went inside, informed H.P.'s father and brother of the abuse, and the NOPD were called.

NOPD Sergeant Lawrence Jones, who was assigned as lead investigator, testified that he was contacted by the Public Integrity Bureau to investigate a sexual assault involving a police officer and a nine year old girl. Sergeant Jones arrived at the scene and later obtained statements from H.P., H.P.'s family members, Mr. Thomassie, and Mr. Thomassie's mother.[10] Sergeant Jones testified that the witnesses were confused as to the timeframe of the incident. Sergeant Jones stated that "some [of the witnesses] said the victim was nine. It was later learned that the victim was actually seven."

Sergeant Jones further testified that at the conclusion of his investigation he did not apply for an arrest warrant. Sergeant Jones explained his investigation as follows:

> One of the things that we're required to do with a Child Abuse Investigation is to do a consultation, which we call a charge conference, with the District At-

---

7. D.C. testified that she had a history of drug and alcohol abuse and that she knew it would be factored into whether the NOPD would believe her over Mr. Thomassie. At trial, D.C. confirmed that she was convicted in 2014 for possession of legend drugs and placed on probation for five years.

8. D.C. continued to live with Mr. Thomassie for about seven or eight years following the incident.

9. H.P. testified that she moved into to her father's house in in 2003 or 2004, when she was in the third grade. S.P., Sr., testified that H.P. came to live with him in 2003.

10. Sergeant Jones testified that there were inconsistencies in the witnesses' statements. The inconsistencies between the H.P.'s and D.C.'s statements related to the timeline, the position of H.P. when the abuse occurred, and the status of H.P.'s clothing when the abuse occurred.

torney. In this particular investigation it was a delayed reporting. It happened a long time ago. So there was no physical evidence involved in this case. There were several inconsistencies involved in this investigation. So, I wanted to present that case to the charge conference.

Sergeant Jones testified that the District Attorney decided to bring the case before a grand jury, which subsequently returned an indictment of aggravated rape.

## DISCUSSION

### Assignment of Error Number Three [11]

In his third assignment of error, Mr. Thomassie contends that the district court erred in admitting into evidence two sets of text messages retrieved from his cell phone.[12] Mr. Thomassie first contends that the text messages were not relevant and thus not admissible. He further contends that the texts messages were highly prejudicial and that the prejudice outweighed any probative value they might have.

*Admissibility of Evidence*

All relevant evidence is admissible, and evidence that is not relevant is not admissible. La. C.E. art. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. Evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by con-

siderations of undue delay, or waste of time." La. C.E. art. 403.

Addressing the admissibility of evidence, this court noted in *State v. Dove*, 15–0783, pp. 29–30 (La.App. 4 Cir. 5/4/16), 194 So.3d 92, 112, the following:

"Unfair prejudice," as used in La. C.E. art. 403, means that "the offered evidence has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" Author's Note (3), La. C.E. art. 403, *Handbook on Louisiana Evidence Law*, Pugh, Force, Rault & Triche, p. 380 (2011). A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. *State v. Henry*, 11–1137, p. 9 (La.App. 4 Cir. 10/24/12), 102 So.3d 1016, 1022.

A trial court's ruling on the admissibility under La. C.E. art. 404 B(1) is reviewable under an abuse of discretion standard. *See State v. Henderson*, 12–2422, pp. 3–4 (La. 1/4/13), 107 So.3d 566, 568; *State v. Barnes*, 11–1421, p. 15 (La.App. 4 Cir. 9/19/12), 100 So.3d 926, 936. A trial court's ruling as to the relevancy of evidence will not be disturbed absent a clear abuse of discretion. *State v. Sanders*, 12–0409, p. 14 (La.App. 4 Cir. 11/14/12), 104 So.3d 619, 630. "A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect." [*State v.*] *Girard*, 12–0790, p. 6 [ (La. App. 4 Cir. 3/6/13], 110 So.3d [687,] 691.

---

11.  Given our finding that Mr. Thomassie is entitled to a new trial based on the erroneous admittance of certain text messages, we pretermit discussion of the remaining assignments of error.

12.  Although three sets of text messages were admitted, Mr. Thomassie only appeals the ad-

mittance of two of them—the text messages to and from Ms. Henry; and those between him and Sergeant Glaudi. Because we find the admission of the text messages between Mr. Thomassie and Ms. Henry constitute reversible error, we pretermit addressing the text messages exchanged with Sergeant Glaudi.

*Id.* (footnote omitted). *See also State v. Ross*, 15–1031, p. 17 (La.App. 4 Cir. 6/15/16), 195 So.3d 1210, 1221.

When determining the independent relevancy of evidence and balancing its probative value against its prejudicial effect, " 'the court seeks to answer the question: Is this evidence so related to the crime on trial or a material issue or defense therein that, if admitted, its relevancy will outweigh the prejudicial effect, which the defendant will necessarily be burdened with?' " *State v. Altenberger*, 13–2518, p. 8 (La. 4/11/14), 139 So.3d 510, 515 (quoting *State v. Garcia*, 09–1578, p. 55 (La. 11/16/12), 108 So.3d 1, 39).

The August 17, 2015 text messages between Mr. Thomassie and Ms. Henry read as follows:

MS. HENRY: Got a question when you get up my love

MR. THOMASSIE: Ask now. I'm still up

MS. HENRY: It's a blushing question lol

MS. HENRY: Soooooooooo if I take a picture ... U got your stuff all shaved off ... Is that your preference on females too ? Lol

MR. THOMASSIE: I'm not completely shaved. Trimmed and shaved, lol. Yes. No hair is best but as long as you're clean, I'm good.

MS. HENRY: Yeah your [sic] trimmed.... I know....

MR. THOMASSIE: [Red-cheeked, smiling emoji]

MS. HENRY: Ok, just that's a pain ... Itches geeeezzz you would be difficult

MS. HENRY: Ok I'll take care of you my baby.. Just feel not really a porn star ya know ;)

MS. HENRY: No pimp suit right ;)

MR. THOMASSIE: All shaved too [head-shot photo of Mr. Thomassie]

MS. HENRY: Oh well dang..... You look good either way, but I think I prefer the bad boy goatee lol. But I know not for court ;)

MR. THOMASSIE: It grows back quick

During the pretrial hearing, the State contended that the text messages were relevant. The State argued the following:

THE PROSECUTOR: It is very relevant, the fact that he's going to be texting selfies while picking a Jury on an aggravated rape, showing his hairless face to the woman he says I prefer—or no hair is best. How could that not be relevant when you're talking about the rape of a seven year old girl, that that's what he's going to text within twenty-four hours of picking a jury on an aggravated rape, facing a life sentence?

* * *

That to us goes directly to what we are going to say is getting into his head a little bit, and we're talking about a man who is inclined to rape a child. That to us becomes extremely important when he's talking about wanting a female to be completely without hair down there.

THE COURT: So I mean. It appears to me that the State is trying to introduce this, allegedly, to show the defendant's alleged predisposition?

THE PROSECUTOR: Correct. It's guilt.... It's essentially evidence of guilt.

Moreover, the State referred to the text messages exchanged with Ms. Henry in its rebuttal argument at the close of trial. The State argued the following:

And you cannot stand up here and reasonably say to an intelligent group of ladies and gentlemen that it has no im-

pact on this case when he says he prefers a female to have no pubic hair at all. This isn't a narcotics case, ladies and gentlemen. In that case I'd say, [sic] it's not relevant. If this were a murder, I'd say it's not relevant, but this is a man charged with raping a prepubescent girl, a seven year old girl, and he's taking selfies, telling his girlfriend he prefers women with no pubic hair. That should be very alarming to any person sitting on this Jury. That should be one of the most important things to give you an idea of just what kind of real good guy he is.... And I'm going to take a selfie and talk about a prepubescent—no public [sic] hair on a woman in the rape of a seven year old girl.

In its brief to this court, the State did not address the admissibility of the text messages. At oral argument before this court, the State conceded that the probative value of the text messages was low. The State also argued that the prejudicial effect was minimal and did not outweigh the probative value of the evidence. We disagree.

In seeking to admit the text messages in question, the State offered no support for its claim that the text messages were relevant. The State simply argued that an adult male's sexual attraction to adult females with all pubic hair removed necessarily means that he is also sexually attracted to prepubescent females—because they presumably have no pubic hair. The State, however, offered no expert testimony from an expert in the field of human sexuality or some similar field of expertise to support this contention.

On appeal, counsel for Mr. Thomassie argues that men preferring women without pubic hair is not indicative of a pedophiliac predisposition. Citing various scholarly and contemporary articles, Mr. Thomassie submits that adult men commonly prefer adult women without pubic hair and that many adult women also indulge in that preference. According to the State's arguments, Mr. Thomassie contends this preference would make most men and women pedophiles.

Given the lack of any supporting evidence, Mr. Thomassie's statements regarding his preference for no pubic hair on an adult female is not evidence supporting a finding of guilt of the aggravated rape of a prepubescent girl. Rather, the State's remarks constitute irrelevant, prejudicial appeals to emotion and inflammatory arguments going beyond the facts of the present case. *See State v. Miller*, 98–0301, pp. 11–12 (La. 9/9/98), 718 So.2d 960, 966 (finding that although "patently prurient and highly inappropriate," the "defendant's statement to his neighbor's child that he had seen her naked in his bedroom with her arms and legs open [was] admissible to show his intent to molest the victim of the charged offense and to show that the molestation was not an accident."). The text messages neither relate to the crime of aggravated rape of H.P. nor a material issue here. Any probative value is outweighed by the prejudicial effect of the text messages. We thus find that the district court abused its discretion in admitting the text messages between Mr. Thomassie and Ms. Henry.

*Harmless Error*

The erroneous admission of evidence is subject to the harmless error analysis. *State v. Campbell*, 15–0017, p. 27 (La.App. 4 Cir. 6/24/15), 171 So.3d 1176, 1192; *State v. Williams*, 12–0252, p. 23 (La.App. 4 Cir. 4/17/13), 115 So.3d 600, 613; *State v. Hugle*, 11–1121, p. 19 (La. App. 4 Cir. 11/7/12), 104 So.3d 598, 613. *See also* La. C.E. art. 103(A) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

" 'Harmless error analysis begins with the premise that the evidence is otherwise sufficient to sustain the conviction if viewed from the perspective of a rational fact finder and asks whether beyond a reasonable doubt the error could not have contributed to the verdict actually returned by the defendant's jury.' " *Campbell*, 15–0017, p. 27, 171 So.3d at 1192 (quoting *State v. Gibbs*, 41,062, p. 8 (La.App. 2 Cir. 6/28/06), 935 So.2d 349, 354); *Dove*, 15–0783 at p. 30, 194 So.3d at 112, n. 3. *See also Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Stated otherwise, harmless error exists when the guilty verdict actually rendered was "surely unattributable" to the error. *State v. Higginbotham*, 11–0564, p. 3 (La. 5/6/11), 60 So.3d 621, 623. "A trial error ... may 'be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' " *State v. Merwin*, 15–0681, p. 18 (La.App. 4 Cir. 1/27/16), 186 So.3d 759, 769 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 308–09, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

As noted above, the State failed to present any argument in its brief on appeal regarding the admissibility of Mr. Thomassie's text messages. The State both introduced the text messages into evidence at trial and continued to reference the text messages in closing arguments. The State implied to the jury that Mr. Thomassie was morally reprehensible for sending such text messages given the nature of the crime he was charged with committing. Additionally, the jury verdict was not unanimous—it was a ten to two verdict.

Considering all the facts and circumstances, we find that the erroneous admission of the texts messages was not harmless. Rather, the admittance of such evidence was prejudicial and affected substantial rights of the accused and was not harmless beyond a reasonable doubt. La. C.Cr.P. art. 921.[13] As Sergeant Jones testified, there were many inconsistencies in H.P.'s and D.C.'s statements regarding the details surrounding the commission of the crime. Furthermore, inconsistencies were also found between H.P.'s and D.C.'s trial testimony.[14] This fact, coupled with the non-unanimous jury verdict, suggests that the evidence, as viewed by the jury, was not overwhelming. Accordingly, we cannot find that the guilty verdict was surely unattributable to the error in admitting the text messages. The error thus was not harmless and requires reversal of Mr. Thomassie's conviction and sentence.

### DECREE

For the foregoing reasons, we reverse the defendant's conviction and sentence and remand for a new trial.

**REVERSED AND REMANDED FOR A NEW TRIAL.**

BONIN, J., CONCURS WITH REASONS.

---

13. La. C.Cr.P. art. 921 provides that "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."

14. For instance, on cross examination, H.P. admitted that in her statement to police, she said that Mr. Thomassie did not actually insert anything into her mouth. She testified, however, that he forced it into her mouth. H.P. also testified that she informed C.R. that Mr. Thomassie had his pants down around his ankles during the incident. At trial, however, D.C. testified that Mr. Thomassie's penis was pulled out through the zipper of his pants.

BONIN, J., CONCURS WITH REASONS.

I concur but write separately to underscore the wholly inadmissible and irrelevant nature of the text-messages between Mr. Thomassie and Anna Henry, which were erroneously admitted by the trial judge over strenuous defense objection, and to emphasize that the erroneous admission requires reversal.

### I

It is noteworthy that the prosecution sought to introduce the text-messages under the Articles governing confessions and inculpatory statements of the defendant. *See* La. C.Cr.P. arts. 716, 722, 767, 768. But a statement by Mr. Thomassie that he prefers his adult girlfriend to depilate her pubic hair is neither a confession that he raped the victim in this case, H.P. nor an inculpatory statement. *See State v. Brumfield*, 329 So.2d 181, 187 (La. 1976) ("[A] confession admits commission of the crime. . . ."); *State v. Williams*, 98–0806, p. 4 (La. App. 4 Cir. 3/24/99), 732 So.2d 105, 108 (An " 'inculpatory statement' refers to an out-of-court admission of incriminating facts made by the defendant after the crime has been committed" and "is one that admits a fact tending to establish guilt or from which guilt can be inferred.") (citing *State v. Bodley*, 394 So.2d 584, 589 (La. 1981)). Ms. Henry is an adult woman with no relation to the victim in this case. The text-messages neither relate to the charged crime nor do they constitute facts or circumstances from which guilt can be inferred. Thus, the prosecution's stated justification for admitting this evidence is unavailing.

Two other proposed stand-by justifications for the exceptional admission of this evidence are Article 404 B(1) and Article 412.2 of the Louisiana Code of Evidence. But neither of these Articles applies to the text-message exchange between Mr. Thomassie and his adult girlfriend.

First, Louisiana law prohibits the use of evidence of other wrongs or acts when they are admitted for the sole purpose of showing that the defendant committed the charged crime because he has a propensity to commit such crimes or because he is a man of criminal character. *See State v. Garcia*, 09–1578, p. 53 (La. 11/16/12), 108 So.3d 1, 38; *see also* La. C.E. art. 404 B(1). Such evidence is generally inadmissible is because the other acts "involve[ ] substantial risk of grave prejudice to a defendant." *State v. Prieur*, 277 So.2d 126, 128 (1973). There are, however, limited exceptions upon which evidence of other acts may be admitted. The prosecution must establish that the evidence will be admitted for an independent reason, such as to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident." La. C.E. art. 404 B(1). Before evidence can be admitted for one of the enumerated purposes in Article 404 B(1), the prosecution must also show that the other acts evidence has "substantial relevant independent from showing defendant's criminal character in that it tends to prove a material fact genuinely at issue." *Garcia*, 09–1578, p. 54, 108 So.3d at 38. And, as always, the probative value of the evidence must outweigh its prejudicial effect. *See* La. C.E. art. 403.

Second, a more generous or expansive rule of admission of evidence applies when the defendant is charged with a crime involving sexually assaultive behavior or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time. *See* La. C.E. art. 412.2. Subject to the balancing test under La. C.E. art. 403, "evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful

disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant. . . ." La. C.E. art. 412.2 A.

I address the latter exception first. While it is true that Mr. Thomassie was charged with an act "that constitute[s] a sex offense involving a victim who was under the age of seventeen at the time," I discern no authority which would have supported the use of the exceptions under Article 412.2. Text-messages expressing a preference for a shorn pubic area on an adult woman who is sexually intimate with the defendant constitute neither "sexually assaultive behavior" nor "acts which indicate a lustful disposition toward children." *Cf. State v. Layton*, 14–1910 (La. 3/17/15), 168 So.3d 358 (evidence that defendant fondled a woman's breasts at knifepoint constituted "sexually assaultive behavior" even though act was not statutorily proscribed in Louisiana); *State v. Wright*, 11–0141 (La. 12/6/11), 79 So.3d 309 (in prosecution for aggravated incest of teenage son, evidence of defendant's marriage to fourteen-year-old female was admissible to show lustful disposition toward adolescents); *State v. Cox*, 15–0124 (La. App. 4 Cir. 7/15/15), 174 So.3d 131 (in prosecution for sexual abuse of four juveniles, evidence of uncharged sexual abuse of minor victims in other jurisdictions was relevant and admissible under La. C.E. art. 412.2); *State v. Farrier*, 14–0623 (La. App. 4 Cir. 3/25/15), 162 So.3d 1233 (in prosecution for sexual battery of minor, recorded jailhouse calls where defendant admitted watching child pornography, that he could not fight "this," and that he hoped for leniency as "a first offender," were admissible to show his lustful disposition towards children). Thus, the exceptions under La. C.E. art. 412.2 were not available to the prosecution in this case.

As to the admissibility of the text-messages as potential "other crimes, wrongs, or acts," I emphasize that if the prosecution seeks to introduce evidence ⌊4under one of the enumerated purposes under La. C.E. art. 404 B, the evidence "must have substantial relevance . . . in that *it tends to prove a material fact genuinely at issue*." *Garcia*, at p. 54, 108 So.3d at 38 (emphasis added).

In order to convict a defendant of the aggravated rape of a child under thirteen, the prosecution needed to prove beyond a reasonable doubt that 1) the defendant engaged in anal, oral, or vaginal intercourse with the victim, and 2) that the victim was under thirteen-years-old at the time of the offense. *See* La. R.S. 14:42 A(4). Mr. Thomassie categorically denied the charge. Leaving aside the issue of whether the content in the text-messages even qualifies as "other crimes" evidence, the evidence does not fall under any of the permitted purposes in Article 404 B.

Aggravated rape does not require a showing of specific intent; rather the "criminal intent necessary to sustain a conviction is established by the very doing of the act." *State v. Mills*, 00–2525, p. 7 (La. App. 4 Cir. 12/27/01), 806 So.2d 59; *see also* La. R.S. 14:42. Moreover, motive and intent in an aggravated rape prosecution "are self-proving from the commission of the act itself, and are not material issues genuinely contested at trial." *State v. Kennedy*, 00–1554, p. 12 (La. 4/3/01), 803 So.2d 916, 924. Absence of mistake or accident are likewise excluded as genuine issues. *See id.*, at. pp. 12–13, 803 So.2d at 924 ("[N]o rational jury could entertain the possibility, that the defendant's penis accidentally found its way into his victim's vagina or that it did so unaccompanied by lascivious intent."). Finally, the text-messages between Mr. Thomassie and Ms. Henry do not prove in any way whatsoever

that the defendant had the opportunity, preparation, or plan to commit aggravated rape.

The prosecutor argued that the text-messages were "essentially evidence of guilt" and responded in the affirmative when the trial judge asked if the texts were being introduced "to show the defendant's alleged predisposition." This reasoning flies in the face of long-standing and established jurisprudence. *See Prieur*; La. C.E. art. 404 A. *See also Old Chief v. U.S.*, 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) ("Propensity evidence" presents a "risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—[this] creates a prejudicial effect that outweighs ordinary relevance."). The text-messages do not meet any exceptions to the general prohibition on character evidence, nor are they relevant to the charged crime. *See State v. Scales*, 93–2003, p. 9 (La. 5/22/95), 655 So.2d 1326, 1333. (Evidence sought to be admitted must "bear[ ] a *rational connection* to the fact which is at issue in the case.") (emphasis added).

The text-messages are simply not probative and are thus inadmissible. It was error to allow the jury to consider them.

## II

As noted by the majority, the erroneous admission of evidence is subject to harmless error analysis. *See State v. Johnson*, 94–1379, (La. 11/27/95), 664 So.2d 94. Notably, when the state presents inadmissible evidence and the trial judge erroneously allows the inadmissible evidence, however, "the prosecutor has a very heavy burden to demonstrate in the appellate court that the error was harmless beyond a reasonable doubt." *State v. Bell*, 99–3278, p. 6 (La. 12/8/00), 776 So.2d 418, 422. "The prosecutor. generally can overcome this heavy burden only with physical evidence directly connecting the accused with the charged crime, or with strong and corroborated circumstantial evidence." *Id.*

There are several factors that courts consistently take into account when conducting an analysis of whether the introduction of inadmissible evidence was harmless. Generally, a reviewing court will assess the strength of the state's case against the defendant,[1] whether the jury's verdict was unanimous or not,[2] whether the prosecutor relied on the erroneously-admitted evidence in closing argument,[3] and whether the trial court instructed the jury on the limited purpose

---

**1.** *See, e.g., State v. McArthur*, 97–2918, p. 4 (La. 10/20/98), 719 So.2d 1037, 1043 (given "numerous inconsistencies" in victim's testimony, court could not say that erroneous admission of other crimes evidence did not contribute to the verdict); *cf. State v. Everett*, 11–0714, p. 42 (La. App. 4 Cir. 6/13/12), 96 So.3d 605, 634 (even if evidence was improperly admitted, its admission was harmless error because of overwhelming evidence of guilt presented at trial).

**2.** *See, e.g., State v. Lewis*, 12–1021, p. 16 (La. 3/19/13), 112 So.3d 796, 805 (in context of denial of right to exercise back strike, non-unanimous verdict one of the factors to consider in harmless error analysis); *State v.*

*Frith*, 13–1133, p. 13 (La. App. 4 Cir. 10/22/14), 151 So.3d 946, 954 (same).

**3.** *See, e.g., State v. Bell*, 99–3278, p. 8 (La. 12/8/00), 776 So.2d 418, 423 (court could not conclude that the jury's guilty verdict was surely unattributable to the erroneous admission of evidence, "especially since the prosecutor exploited the inadmissible evidence in rebuttal closing argument."); *State v. Whittaker*, 449 So.2d 611, 613 (La. App 1st Cir. 1984) (state "strenuously" relied on inadmissible other crimes evidence as admission of defendant's guilt, especially in closing argument; therefore, error was not harmless); *cf. State v. Smith*, 11–0091, pp. 29–30 (La. App. 4 Cir. 7/11/12), 96 So.3d 678, 695 (prosecutor's ref-

for which the evidence was admitted.[4] *See generally Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (listing factors for courts to consider when conducting harmless error analysis in Confrontation Clause errors).

The prosecution's case against Mr. Thommasie consisted, in pertinent part, of testimony from H.P. and her mother, D.C., which as noted by the majority, contained numerous inconsistencies. *See State v. McArthur*, 97–2918, p. 4 (La. 10/20/98), 719 So.2d 1037, 1043 (given "numerous inconsistencies" in victim's testimony, court could not say that erroneous admission of other crimes evidence did not contribute to the verdict). No physical evidence connected Mr. Thomassie to the crime. *Cf. State v. Danastasio*, 12–1157, p. 21 (La. App. 4 Cir. 1/30/14), 133 So.3d 224, 237 (erroneous admission of other crimes evidence harmless error in light of DNA evidence). Moreover, the prosecutor, in her closing rebuttal argument, stressed to the jury that the text messages between Mr. Thomassie and Ms. Henry should be "alarming" to them and "one of the most important things" for them to consider in assessing "just what kind of real good guy [defendant] is . . . ." *See Bell*, at p. 8, 776 So.2d at 423; *State v. Whittaker*, 449 So.2d 611, 613 (La. App 1st Cir. 1984) (state "strenuously" relied on inadmissible other crimes evidence as admission of defendant's guilt, especially in closing argument). And, as the majority points out, the jury convicted Mr. Thomas-

sie by a ten-to-two, non-unanimous verdict. *See generally State v. Lewis*, 12–1021, p. 16 (La. 3/19/13), 112 So.3d 796, 805 (non-unanimous verdict one of the factors to consider in harmless error analysis when defendant denied right to back strike juror); *State v. Frith*, 13–1133, p. 13 (La. App. 4 Cir. 10/22/14), 151 So.3d 946, 954 (same).

Evidence should be excluded when its prejudicial effect outweighs its probative nature. *See* La. C.E. art. 403. "Prejudicial" limits the introduction of other crimes evidence only when it is unduly and unfairly prejudicial. *See State v. Henderson*, 12–2422, p. 2 (La. 1/4/13), 107 So.3d 566, 568. And "unfair prejudice" as to a criminal defendant, "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense." *Id.* (citing *State v. Rose*, 06–0402, p. 13 (La. 2/22/07), 949 So.2d 1236, 1244). The *only* plausible reason for the admission of evidence in this case was to encourage the jury to infer guilt by suggesting that Mr. Thomassie's preferences, as texted, confirmed his desire for a prepubescent girl.[5] The text messages had no bearing on the charged crime nor did they have any independent relevance. I thus do not find that the prosecution has met its heavy burden to show that the erroneous admission of prejudicial evidence was harmless beyond a reasonable doubt.

---

erence in closing argument to defendant's drug use in murder trial was not improper because evidence was admissible to show opportunity and identity).

**4.** *See, e.g., State v. Beaulieu*, 12–0735, p. 25 (La. App. 4 Cir. 8/7/13), 122 So.3d 1050, 1065 (other crimes evidence surely not attributable to the verdict where, in part, judge charged jury prior to deliberations that the evidence served a "limited purpose"); *State v. Pollard*, 98–1376, p. 11 (La. App. 4 Cir. 2/9/00), 760

So.2d 362, 368 (no evidence that trial court instructed jury as to limited purpose of other crimes evidence before allowing its admission).

**5.** I do not, however, discount that the prosecutor was really inviting the jurors to become incensed that Mr. Thomassie, who was facing trial for such a serious and infamous charge, would so cavalierly be engaging in sexually arousing communications with his adult girlfriend.

$I_8$It was overreach and I therefore agree with the majority that we cannot find that "the verdict actually rendered by this jury was surely unattributable to the error." *State v. Magee*, 11–0574, p. 46 (La. 9/28/12), 103 So.3d 285, 318 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)). *See also Johnson*, at p. 19, 664 So.2d at 102–03 (Victory, J., dissenting) (where defense hinged on defendant's credibility, erroneous introduction of other crimes evidence not harmless beyond a reasonable doubt).