STATE OF LOUISIANA             *        NO. 2023-KA-0539

VERSUS                      *

                            COURT OF APPEAL

DEMECCIO CASTON        *

                            FOURTH CIRCUIT

                      *

                            STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 547-420, SECTION "B"
Honorable Tracey Flemings-Davillier, Judge
* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *
(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet,
Judge Karen K. Herman)


Jason R. Williams
District Attorney
Parish of Orleans
Brad Scott
Chief of Appeals
Zachary M. Phillips
Assistant District Attorney
District Attorney's Office
619 S. White Street
New Orleans, LA 70119

      COUNSEL FOR STATE OF LOUISIANA/APPELLEE

Christopher J. Murell
Meghan Matt
MURELL LAW FIRM
2831 St. Claude Ave.
New Orleans, LA 70117

      COUNSEL FOR DEFENDANT/APPELLANT

      **AFFIRMED IN PART; VACATED AND REMANDED IN PART**

              **FEBRUARY 24, 2025**

*RLB*
*RML*
*KKH*

Demeccio Caston ("Mr. Caston") seeks appellate review of his convictions and sentences for second-degree murder with a firearm, two counts of possession of a firearm by a convicted felon, and obstruction of justice in a homicide investigation. For the reasons that follow, Mr. Caston's convictions and sentences are affirmed in part and vacated and remanded in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the evening of August 10, 2019, New Orleans Police Department ("NOPD") Detective Sasha Tousant ("Detective Tousant") responded to a homicide by shooting on the 7200 block of Bunker Hill Road in New Orleans East. Upon her arrival, she observed the deceased victim, Patrick Lamar ("Mr. Lamar"), in the driver's seat of a Nissan sedan parked in a driveway. She observed several spent .40 caliber casings in the vehicle and on the victim's body and also observed "a few nine-millimeter casings" in the street and in front of the Nissan.

Video surveillance footage obtained from the night of the murder was introduced and played for the jury. The surveillance footage depicted a male

1

individual wearing a short-sleeved shirt and shorts walk along the sidewalk. Then he approached the driver's side of a dark Nissan sedan, which was backed into a driveway and fired approximately 18 shots into the vehicle.

At the time of the shooting, people were present in the front yard and on the porch of the house next door to the driveway. Others were standing in the front yard of a house across the street. A second male, who was slighter in build than the shooter, appeared from across the street and fired approximately ten shots in the direction of the original shooter.

Detective Tousant spoke with Kevinisha Russell, an eyewitness on the scene who, during the course of the investigation, provided a recorded statement identifying the shooter by his nickname "Meccio" and that his first name was "Demeccio." Detective Tousant learned that the shooter was wearing a dark blue Dickie shirt and a bucket hat. She additionally learned that Mr. Caston was present on the scene after the murder wearing a black Dickie shirt. Based on this information, an arrest warrant was issued.

While executing the warrant at Mr. Caston's home, officers noticed that someone had tampered with Mr. Caston's attic. During a cursory search police discovered a Glock firearm. Additionally, officers found a black Dickie shirt and a Glock magazine. Mr. Caston was arrested and gave a recorded statement.

Mr. Caston's recorded statement was played for the jury at trial. In it, Mr. Caston denied killing Mr. Lamar, and insisted, "[t]hat's my friend, that's my partner, my buddy…I didn't kill my friend." Mr. Caston told police that he was home at the

2

time of the murder. Mr. Caston also stated that "when [he] came around after the murder happened," his cousin informed him that there was "a girl out there she seen [sic] everything." He indicated that the girl knows "who did it" and knows it was not him. He told the investigating officers that his name was "put out there" because of people who did not like him. He admitted that the firearm found in his residence belonged to him, but it was for protection and was not used to kill Mr. Lamar.

Mr. Caston eventually told the officers that he knew the killer's name. Mr. Caston was provided a piece of paper on which he wrote "Bud—shooter, Ronnie—driver." Mr. Caston then stated that a truck was parked under the tree four houses down from the murder. "Bud" exited the truck and approached Mr. Lamar and said, "[d]idn't I tell you to stop?" Mr. Lamar asked, "[s]top what?" At which point, Bud shot Mr. Lamar "a couple of times."

At trial, Ms. Russell initially stated she did not want to testify. She then testified that she did not remember speaking to a police officer in this case. The State asked Ms. Russell if listening to her recorded statement would refresh her memory and she responded that she was not sure. The State replayed the surveillance footage that was previously admitted into evidence. When asked if the video refreshed her memory, she responded, "not really." While Ms. Russell testified that she did not provide a statement to police, she later conceded that she had provided a recorded statement. Her statement was then played for the jury.

In her recorded statement, Ms. Russell stated that she "knew for sure it was him." Ms. Russell stated that she was "next to [Mr. Lamar's] car" on the sidewalk

3

and heard shots. After Mr. Lamar was shot, she looked at him and saw him shaking. Ms. Russell stated she was not friends with Mr. Caston but had seen him in the area every day over the past six months. She further stated that two days before the murder, Mr. Lamar and Mr. Caston argued.

After her statement was played, Ms. Russell testified that when she identified Mr. Caston during her interview with police, she had been truthful. Ms. Russell explained to the jury that she was familiar with Mr. Caston because he was "one of the people that hung around the little area." Ms. Russell stated that she did not see Mr. Caston in the courtroom, and when her attention was directed to Mr. Caston, she indicated she was not sure if he was Mr. Caston.

Following a three-day trial, the jury found Mr. Caston guilty as charged on all counts. Prior to sentencing, Mr. Caston's trial attorney withdrew and attorney Christopher Murrell filed a motion to substitute and enroll as Mr. Caston's counsel. Thereafter, Mr. Caston filed a motion for new trial and attached an affidavit of Irion Russell ("Irion"), a purported witness to Mr. Lamar's murder. In it he claimed that Irion's affidavit is material to the issue of his identity as the shooter and is of such a nature that her testimony, if presented to the jury, would have likely changed the outcome in this case. He maintains that Irion's name is not reflected in the police report as a person the police interviewed and is entitled to explore the issue pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963). The trial court denied the motion, finding the evidence was cumulative of testimony already presented at trial. Mr. Caston also sought a continuance of the hearing on his motion

4

for new trial and enforcement of a subpoena for witness Irion, both of which the trial court denied. Mr. Caston files the instant appeal.

## *ERRORS PATENT*

Before reviewing Mr. Caston's assigned errors, we review the record for errors patent. The record in this case reveals one error patent. Mr. Caston's conviction for illegal possession of a firearm by a convicted felon, La. R.S. 14:95.1(B)(1) requires that the guilty ¨shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars." The trial court failed to impose the mandatory fine. Therefore, the matter must be remanded for the correction of Mr. Caston's sentence and the imposition of the statutorily mandated fine. *See State v. Williams¸*03-0302, p. 3 (La. App. 4 Cir. 10/6/03), 859 So.2d 751, 753; *State v. Dorsey*, 20-0029, pp. 4-5 (La. App. 4 Cir. 12/9/20), 312 So.3d 652, 656.

## *DISCUSSION*

Defendant appeals his convictions and sentences raising (14) assignments of error. While we find no merit to Mr. Caston's assigned errors[1], this opinion will

---

[1] Again, we find all of Mr. Caston's assigned errors lack merit. His assigned errors—some of which overlap—are as follows:

1. The court erred in denying defendant an opportunity to present compelling new evidence of his innocence.
2. The court abused its discretion in finding that the new evidence of innocence was redundant to testimony admitted at trial.
3. The trial court abused its discretion in not granting a continuance on the hearing on motion for new trial.
4. The trial court erred in refusing to enforce the subpoena for Irion Russell's appearance at the Motion for New Trial hearing.

address the most significant of these assignments of error.

*Motion for New Trial*

Mr. Caston contends that the trial court erred in denying his motion for new trial, claiming the newly discovered evidence is exculpatory in that Irion would have testified that she also witnessed the murder and that Mr. Caston was not the individual she witnessed shoot Mr. Lamar inside his vehicle. Irion's affidavit stated that Mr. Caston was not the man who shot the victim because the shooter was a lot smaller than [Mr. Caston] and slimmer." Mr. Caston claims that this information was not included in the police report. He alleges that he needs more time to subpoena all NOPD notes of witness interviews and present testimony of Detective Tousant regarding conversations she may have had with Irion.

In opposition, the State contends that the trial court properly exercised its discretion in denying the motion, as the new evidence did not fundamentally alter

---

5. The trial court erred when it allowed the state to refresh Kevinisha Russell's memory by playing her out-of-court, unsworn recorded statement in front of the jury.
6. The trial court committed reversible error when it allowed the state to introduce Kevinisha Russell's recorded statement as substantive proof of guilt.
7. The court committed reversible error when it denied defendant's cause strike of Rebecca O'Neill Saacks.
8. The court committed reversible error when it granted the state's cause strike of Denise O'Guinn.
9. The court committed reversible error when it granted the state's cause strike of Andrew Billon.
10. The trial court erred in admitting anonymous witness hearsay testimony through the "investigative exception," which is prohibited by both state and federal law.
11. The trial court erred in admitting physical evidence and testimony that the gun and bullets were found hidden in defendant's attic through the "Investigative Exception," which is prohibited by both state and federal law."
12. The trial court erred by permitting the state to repeatedly argue in closing that Kevinisha Russell was scared of defendant when she continually testified that she was not.
13. It was reversible error for the state to argue in closing that defendant killed Patrick Lamar because he had a twenty-thousand-dollar bounty on his head because no evidence of this was admitted.
14. Cumulative error requires reversal.

6

the jury's understanding of the case. Namely, the jury heard Mr. Caston's statement and his claim that there were people that would exonerate him; however, those individuals did not come forward at trial.

The trial court denied the motion to continue stating, "[trial] counsel did not see fit to call that witness [which] was a choice…made in its litigation strategy." The trial court further determined that Mr. Caston's recorded statement had indicated that he was aware Irion possessed relevant information about the murder, yet he failed to subpoena her for trial. Therefore, the motion for new trial was not based on newly discovered evidence.

Under La. C.Cr.P. art. 851(B)(3), a defendant must prove that: (1) new evidence was discovered after trial; (2) failure to discover the evidence was not due to a lack of diligence on the part of the defendant; (3) the evidence is material to the issues at trial; and (4) the evidence, if introduced at trial, would produce a different verdict if the matter was retried. La. C.Cr.P. art. 851(B)(3); *State v. Brisban*, 00-3437, pp. 11-12 (La. 2/26/02), 809 So.2d 923, 931. "A ruling on a motion for new trial rests within the sound discretion of the trial judge." *Id.*

In this case, the information contained in Irion's affidavit is neither new nor undiscoverable prior to trial. Mr. Caston was aware of Irion from the beginning of the investigation. He told investigating officers about two females that could exonerate him, one of them being Irion. Furthermore, a "field interview document" was provided to Mr. Caston during discovery that included Irion's name and address. Likewise, Mr. Caston had been invited to Irion's wedding and Irion's name and

7

email address are contained in the police report.

In light of the foregoing and Mr. Caston's recorded statement to police, the information contained in Irion's affidavit was not newly discovered evidence and was largely duplicative of testimony and evidence presented at trial. Therefore, the first element of La. C.Cr.P. art. 851(3) is not met in this case. We find no abuse of the trial court's discretion in denying the motion for new trial.

Mr. Caston also argues that the trial court abused its discretion in denying a continuance for the motion for new trial, preventing him from properly presenting his case. We disagree. Mr. Caston had ample opportunity to prepare and failed to demonstrate a specific prejudice resulting from the denial where he was aware of Irion as a potential testifying witness from the beginning of the investigation. For the reasons the trial court properly denied the motion for new trial, the denial of the continuance was also properly denied.

*Kevinisha's Recorded Statement*

In his fifth and sixth assignments of error, Mr. Caston contends that the trial court erred in admitting Kevinisha Russell's out-of-court recorded statement, arguing that it constituted inadmissible hearsay and violated his confrontation rights under the Sixth Amendment. Mr. Caston cites La. C.E. art. 612(B), which permits a witness to review "any writing, recording, or object in order to refresh his memory while testifying," but requires the witness to testify from memory independent of the statement. Mr. Caston alleges that Kevinisha's memory should have been refreshed outside the presence of the jury.

8

At trial, Kevinisha initially testified that she did not remember speaking to police about this case. She was asked if reviewing her recorded statement would help her recall, and she responded that she was unsure. The surveillance videos, which had already been published to the jury, were replayed for Kevinisha. When asked if the playing of the videos refreshed her memory, she testified "Not really." When asked if listening to her recorded statement would refresh her memory, she initially testified that she had never spoke to "none of y[']all about that." Eventually, however, she admitted that she had given a recorded statement.

Kevinisha's video-recorded statement was played to refresh her memory. After the statement was played, Kevinisha admitted to having identified Mr. Caston as the shooter and that when she provided her statement she was being truthful. La. C.E. art. 801(D)(1)(c), allows the introduction of a prior statement by a witness which is "one of identification of a person made after perceiving the person." To the extent Kevinisha identified Mr. Caston as the shooter in her statement, the statement was properly introduced according to La. C.E. art. 801(D)(1)(c).

Moreover, her statement was properly admitted as it was used to impeach her credibility. In *State v. Pollard*, 14-0445, p. 16 (La. App. 4 Cir. 4/15/15), 165 So.3d 289, 301, a witness's prior recorded statement was introduced to attack the witness's credibility when he said he did not know, denied the facts, or indicated that he would not comment to questions posed by the State regarding his prior statement. This Court held that the statement was properly admitted under La. C.E. art. 801(D)(1)(a) where the witness was directed to his statement and fairly given an opportunity to acknowledge or deny its existence. In this case, Kevinisha's recorded statement was properly admitted where she equivocated as to whether she gave a statement to law enforcement. We find this assignment without merit.

9

*Juror Challenges*

Mr. Caston also assigns as error the trial court's denial of his challenge for cause to potential juror Rebecca Saacks, and its granting of the State's challenges for cause to potential jurors Denise O'Guinn and Andrew Billon.

When a defendant uses all 12 of his peremptory challenges, a trial court's erroneous ruling on a defendant's challenge for cause that results in the deprivation of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of his conviction and sentence." *State v. Juniors*, 03-2425, pp. 7-8 (La. 6/29/05), 915 So.2d 291, 304. Therefore, the defendant must prove: (1) he exhausted all of his peremptory challenges; and (2) the trial court erred in refusing to grant his challenge for cause." *Id.*, p. 8, 915 So.2d at 305. Similarly, if the State uses all of its peremptory challenges, a trial court's erroneous grant of a state's challenge for cause requires reversal. La. C.Cr.P. art. 800(B). Here, both the State and Mr. Caston exhausted their peremptory challenges.

<u>Rebecca Saacks</u>

The trial court denied Mr. Caston's challenge for cause as to Ms. Saacks. Consequently, Mr. Caston used a peremptory challenge to strike her from the venire. Ms. Saacks expressed some level of fear serving as a juror on a second degree murder case. She later explained that she might struggle with feeling scared during the trial but that it would not be distracting for her. She further indicated during State questioning that she would want to be fair and impartial if selected. She was called back for additional questioning in chambers wherein she explained that she has children and that she may struggle with feeling scared but those concerns would not be distracting for her. She was asked if she could apply the law as instructed and

adjudicate Defendant's guilt based on the evidence, to which she responded that she would try.

Ms. Saacks did not express bias or impartiality and did not suggest to the court that she could not decide the case based on the evidence and law presented. Therefore, we find no merit to this assigned error.

Denise O'Guinn

Over Mr. Caston's objection, the trial court granted the State's challenge for cause of Ms. O'Guinn. Ms. O'Guinn indicated that her "philosophical feelings about the judicial system" would make her "reluctant" "to vote guilty as charged" even if the State met its burden. Her reluctance to apply the law, even if the State met its burden, suggests the inability to return a verdict according to the law. Therefore, the trial court did not abuse its discretion in granting the State's challenge for cause as to Ms. O'Guinn.

Andrew Billon

The State exercised its challenge for cause as to Mr. Billon on the basis that he indicated that because the sentence for second-degree murder was life imprisonment, he would hold the State to a higher burden of proof than required by law. In granting the State's challenge for cause, the trial court explained: "although I think he tried to give what he thought was the best answer to describe what he would do, he did seem to be very troubled with the mandatory life and I do think that that would affect his decision."

La. C.Cr.P. art. 798(1) provides that the State may challenge for cause any juror who is "biased against the enforcement of the statute charged to have been violated." Mr. Billon's responses suggest he would not be able to apply the law relating to reasonable doubt where the charged offense is subject to life

imprisonment. For this reason, we find no error in granting the State's challenge for cause.

*Detective Tousant's Testimony*

Mr. Caston also challenges the admission of Detective Tousant's testimony concerning the description of what Mr. Caston was wearing and the location of his gun when he was arrested at his home. Detective Tousant testified that during her investigation, she learned that Mr. Caston wore a bucket hat on the night of the murder and returned to the murder scene wearing a black Dickie shirt. She also testified that during the execution of the search warrant at Caston's residence, a black Dickie shirt was among the items seized. She identified the shirt for the jury at trial. Detective Tousant also testified that upon effecting the arrest of Mr. Caston at his home, a gun and bullets were found in the attic. Mr. Caston claims this testimony was inadmissible hearsay. The State, on the other hand, argues that the testimony was admissible for explaining the effect this evidence and information had on Detective Tousant's overall investigation, particularly in terms of her interviews of different individuals and in questioning Mr. Caston.

Hearsay rules do not prohibit testimony elicited to explain a police officer's course of investigation. *State v. Edwards*, 21-0494, p. 18 (La. App. 4 Cir. 2/16/22), 336 So.3d 479, 490. "Testimony of a police officer may encompass information provided by another individual without constituting hearsay, if it is offered to explain the course of the police investigation and the steps leading to the Defendant's arrest." *Id.* Detective Tousant's testimony regarding the bucket hat and Dickie shirt as well as the gun's location in the attic, was elicited to explain the course of her investigation and not to prove the truth of the matter asserted.

In any case, the admission of hearsay evidence and an alleged confrontation clause violation is subject to a harmless error analysis. *State v. Wille*, 559 So.2d 1321, 1332 (La. 1990); *State v. Hart*, 10-1614, p. 5 (La. App. 4 Cir. 11/2/11), 80 So.3d 25, 30. "[H]armless error exists when the guilty verdict actually rendered was 'surely unattributable' to the error." *State v. Thomassie*, 16-0370, pp. 11-12 (La. App. 4 Cir. 12/21/16), 206 So.3d 311, 317-18 (quoting *State v. Higginbotham*, 11-0564, p. 3 (La. 5/6/11), 60 So.3d 621, 623). Therefore, even assuming the trial court should have excluded the testimony, considering the evidence introduced at trial including the surveillance video and Ms. Russell's testimony, Mr. Caston's guilty verdicts were surely unattributable to Detective Tousant's objected-to testimony. We find no merit to this assignment of error.

*Closing Arguments*

Mr. Caston also claims the State made improper remarks during closing arguments that warrant reversal of his convictions. First, the State remarked that Kevinisha was scared of Mr. Caston, which Mr. Caston claims is not based on evidence introduced at trial. However, trial counsel failed to object to these statements during the trial, and therefore, the matter is not properly before us on appeal. *See* La. C.Cr.P. art. 841(A) ("An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."); *State v Keys*, 12-1177, p. 13 (La. App. 4 Cir. 9/4/13), 125 So.3d 19, 31("A defendant is limited on appeal to those grounds articulated at trial.").

Mr. Caston also takes issue with the State's remark that the victim had a $20,000 bounty on his head, which he argues was not in evidence. The State argues that this information was, in fact, introduced into evidence. Kevinisha had

13

mentioned the bounty in her recorded statement to police which was played during her trial testimony.

La. C.Cr.P. art. 774 requires that closing argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." In Kevinisha's recorded statement, she indicated her belief that the victim was killed because he had "$20,000 over his head." While this statement was admitted at trial, it was admitted to refresh Kevinisha's memory and to impeach her credibility, not to prove the motive for murder. Therefore, the State's comments exceeded the bounds of proper argument. Nevertheless, "even if the State exceeds these bounds, the court will not reverse a conviction unless 'thoroughly convinced' that the argument influenced the jury and contributed to the verdict." *State v. Martin,* 93-0285, p. 17 (La. 10/17/94), 645 So.2d 190, 200. The record does not support a finding that the comments influenced the jury's verdict. The jury viewed the surveillance footage, heard Mr. Caston's recorded statement to police, and the testimony of Kevinisha and Detective Tousant, all of which supported the State's theory of the case. Considering all the testimony and evidence presented, the State's reference to the alleged bounty is unlikely to have contributed to the jury's verdict.

*Cumulative Effect*

Lastly, Mr. Caston argues that the cumulative effect of the errors raised on appeal warrants reversal of his convictions. Considering we find none of Mr. Caston's assigned errors warrant reversal, this assignment of error also lacks merit.

**CONCLUSION**

Based on the foregoing reasons, we affirm Mr. Caston's convictions and sentences for second degree murder with a firearm and obstruction of justice in a

14

homicide investigation.  Additionally, we affirm Mr. Caston's convictions for illegal possession of a firearm by a convicted felon; however, we vacate the sentences on these counts and remand the matter for the sole purpose of imposing the mandatory fine required by La. R.S. 14:95.1(B)(1).

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**